David E. Leta (1937)
Engels Tejeda (11427)
**SNELL & WILMER LLP**
15 West South Temple, Suite 1200
Salt Lake City, UT  84101
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800
Email: dleta@swlaw.com
Email: etejeda@swlaw.com

*Attorneys for DDB Utah, LC; The Raymond
W. Schmelzer Marital Trust; Top- Notch
Investments, LLC; Rodney Evan Schmelzer;
Brent Thomas Bingham; Bridge Loan
Capital Fund, LP; DPI College, LC;
Milford Copper Investors II, LLC; Reynolds
Brothers, Inc.; and Milford Investors, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**WESTERN UTAH COPPER COMPANY**,<br><br>Debtor. | Bankruptcy Case No. 10-29159 WTT Chapter 11<br><br>[Filed Electronically] |

## LIMITED OBJECTION TO APPLICATION TO EMPLOY THE WATLEY GROUP, LLC AS CONSULTANT AND INVESTMENT BANKER TO DEBTOR

The Senior Secured Creditors[1] object to the *Application to Employ the Watley Group, LLC as Consultant and Investment Banker to Debtor* (the "**Application**") [Doc. No. 89], filed by Western Utah Copper  Company (the "**Debtor**") for the reasons below:

---

[1]      The "**Senior Secured Creditors**" are DDB Utah, LC; The Raymond W. Schmelzer Marital Trust; Top- Notch Investments, LLC; Rodney Evan Schmelzer; Brent Thomas Bingham; Bridge Loan Capital Fund, LP; DPI College, LC; Milford Copper Investors II, LLC; Reynolds Brothers, Inc.; and Milford Investors, LLC.

## BACKGROUND

1.      On May 18, 2010 (the "**Petition Date**"), the Debtor and its owner, Copper King Mining Corporation ("**Copper King**"), filed Chapter 11 petitions in the United States District Court for the District of Nevada.

2.      On July 8, 2010, this Case was transferred to this Court.

3.      On August 2, 2010, the Debtor filed the Application seeking permission to employ The Watley Group ("**Watley**") as *both* the Debtor's senior management *and* its investment advisor effective as of the Petition Date.  [*See* Doc. No. 89, ¶ 7.]  Specifically, the Debtor asks the Court to authorize A. John A. Bryan, Jr. ("**Bryan**") (the principal of Watley) to serve as the Debtor's chief executive officer, and Laurens Nuyens (an employee of Watley) as head of administrative services.  [*See id*.]  Additionally, the Debtor requests permission to retain Steve Durbin and Chris Olin (both employees of Watley) as investment banker and financial modeling analyst, respectively.   [*See id*.]   Neither the Application nor the accompanying declaration by Bryan details the professional services to be rendered by each of these individuals.

4.      The Debtor proposes to pay Watley (i) a post-petition retainer of $100,000 from any debtor-in-possession loans ("**DIP Loans**") that the debtor may obtain, (ii) a monthly "consulting fee" in the amount of $50,000 from any DIP Loans, and (ii) a cash "success fee" in the amount of five and one quarter percent (5.25%) of the aggregate gross proceeds (whether in the form of equity/debt/or DIP financing) *received* by the Debtor during the term of Watley's employment.  [*See* Doc. No. 89, ¶¶ 14-16; 90, pg. 20 of 22, ¶ 5.]  The Debtor proposes to retain Watley for one year or until the effective date of a plan or reorganization, whichever comes first.  [Doc. No. 89, ¶ 10.]  If a plan does not become effective within one year (presumably, from the Petition Date), then "the retention of Watley will be automatically renewed for additional 90-day periods, without any further action by the Debtor or Watley."  [*Id*.]  The Debtor proposes to pay the $50,000 monthly fee to Watley "on a monthly basis . . . subject only to approval pursuant to a

final fee application filed with the Court." [*Id.* at ¶ 18.]  The Debtor also proposes to reimburse Watley for any expenses it incurs as a consultant to the Debtor, including any travel expenses. [*Id*. at ¶ 17.]  The Debtor estimates the monthly amount of these expenses to be approximately $15,000.00.  [*See* Doc. No. 16-1, pg. 12 of 39.][2]

5.      Concurrently with the Application, Copper King filed an application requesting permission to retain Watley in the same capacities, and for the same fees, as set forth above. [*See* Case No. 10-30002, Doc. No. 44.]

6.      The Debtor proposes to indemnify Watley, and any of its officers, employees or agents, "from and against any and all losses, claims, demands, costs, damages, liabilities, expenses of and [sic] nature (including reasonable attorneys' fees and expenses), judgments, fines, settlements and other amounts . . . arising from, or related or incidental to, any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which [Watley or its officers and agents] may be involved, or threatened to be involved, as a party or otherwise, and arising out of or related to" Watley's employment by the Debtor.  [*See* Agreement between Copper King Mining and the Watley Group, LLC (the "**Retention Agreement**"), dated May 18, 2010, Doc. No. 90, pg. 21 of 22.][3]

7.      Watley claims to have "expended significant time and resources acting as the Debtor's proposed financial consultant and investment advisor while this case was pending in the Nevada Court", [Doc. No. 90, ¶ 4,] to have received a $25,000 retainer from "Marcus Southworth, the President and a director of the Debtor" post-petition on or about March 19,

---

[2]     The Official Committee of Unsecured Creditors filed this document while the Case was pending in the Nevada Court.  It is the Debtor's business plan, which Watley prepared, and includes the Debtor's projections of its administrative expenses.
[3]     The Retention Agreement is only signed by Copper King, but it provides that it is entered into between the "Parties" which are defined to include the Debtor.  [*See* Doc. No. 90 pg. 18 of 22.]  It is also the agreement that the Debtor submits as governing its retention of Watley.

2010, [*id.* at ¶ 9,] and to "understand the provisions of 11 U.S.C. Sections 327, 328, 330 and 331." [*Id.* at ¶ 16.]

## OBJECTIONS

8.      The Application should not be granted because the terms under which the Debtor proposes to retain Watley do not comply with §§ 327-331 of the Bankruptcy Code, which govern the employment of professionals.[4]  Specifically, the Court should deny the Application to the extent that it seeks (A) relief nun pro tunc to the Petition Date, (B) permission to retain Watley to serve concurrently as the Debtor's CEO and investment advisor, (C) permission for the Debtor to agree to indemnify Watley pursuant to the terms of the Retention Agreement, (D) permission to pay Watley's post-petition fees on a monthly basis, subject only to subsequent Court review, (E) unconditional approval of the monthly flat "consulting fee" and the 5.25% "success fee", (F) authority to bind the estate to pay administrative expenses from any debtor-in-possession financing obtained with a priming lien under § 364(d) and over the objection of the Senior Secured Creditors, and (G) unconditional permission to represent the Debtor and Copper King.

A.    <u>The Court Should Not Approve Watley's Employment Nunc Pro Tunc Before August 2, 2010</u>.

9.      Post facto approval of professional applications under § 327 is "only appropriate in the most extraordinary circumstances." *In re Albrecht*, 233 F.3d 1258, 1260 (10th Cir. 2000) (citing *In re Land*, 943 F.2d 1265 (10th Cir. 1991)).  "Simple neglect will not justify [post facto] approval of a debtor's application for the employment of a professional." *Land*, 943 F.2d at 1268.  In *Albrecht*, the court held that the debtor did not show extraordinary circumstances warranting approval of its employment of counsel effective ten days prior to the filing of the corresponding application. *Albrecht*, 233 F.3d at 1259-60.  Here, although Watley professes to

---

[4]      "As a general rule, investment bankers must be treated as other Section 327 professionals and should not be given extraordinary treatment, absent a compelling reason to do so." *In re Gillett Holdings, Inc.*, 137 B.R. 452, 457 (Bankr. D. Colo. 1991).

understand § 327, it chose not to file its application until August 2, 2010 – eleven (11) weeks after the Petition Date and eleven (11) weeks after it purportedly entered into the Retention Agreement with the Debtor.  Nowhere in the Application does the Debtor explain its untimely request.  Accordingly, like *Albrecht* and *Land*, the Court should not approve Watley's employment effective as of the Petition Date.

B.      The Court Should Deny the Application to the Extent it Seeks the Appointment of Watley as *both* the Debtor's CEO *and* its Investment Advisor.

10.     Section 327 authorizes the Debtor to employ "professional persons, that do not hold or represent an interest adverse to the estate[] and that are disinterested persons." 11 U.S.C. §327(a).  An applicant is a "disinterested person" only if he "is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor." 11 U.S.C. § 101(14)(B).  Accordingly, Watley is statutorily precluded from concurrently serving as the Debtor's chief operating officer and as its investment advisor, which is a "professional person" within the meaning of 11 U.S.C. § 327(a). *See Gillett Holdings,* 137 B.R. at 457. Watley is, and has been acting as, the Debtor's chief executive officer, in which case he should receive a court approved reasonable salary for his executive services like all other employees of the Debtor based on the amount of time he serves in that capacity each week.  But, because he is the Debtor's CEO, he cannot also serve at its investment adviser.  The Debtor's managers are "fiduciaries" of the estate.  It would be a breach of fiduciary duty for a fiduciary to obtain *independent* professional advice from *himself/herself* since there would be no separation between the decision-maker and the advisor.  Thus, the Application should be denied to the extent that Watley seeks to represent the debtor as an investment advisor, investment consultant or investment banker.

C.      The Court Should Deny the Application to the Extent the Debtor Seeks to Indemnify Watley Pursuant to the Indemnification Clause of the Retention Agreement.

11.      "The Debtor as a debtor-in-possession is a fiduciary." *Gillette Holdings*, 137 B.R. at 458 (citing *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 355 (1985)); *In re Americana Expressways*, 192 B.R. 763, 766 (D. Utah 1996) (same).   While "indemnification for negligence may be acceptable in the workaday world for those acting at arm's length[,] . . . holding a fiduciary harmless for its own negligence is shockingly inconsistent with the strict standard of conduct for fiduciaries." *Gillette Holdings*, 137 B.R. at 458. (quotation omitted).   Watley proposes to serve as the Debtor's management, and, in that capacity, it will be serving as a fiduciary.   Thus, provisions indemnifying proposed professionals of the estate for their own errors and omissions, even if negligent, are "simply unacceptable" and "entirely improper" under the Code.   *See id.*

12.      Here, like *Gillette Holdings*, the Debtor invites the Court to approve Watley's employment pursuant to an overbroad indemnity clause that would effectively allow Watley to disregard its fiduciary obligations to creditors.   As in *Gillette Holdings*, the Court should reject the invitation and deny the Application.

D.      The Application Should be Denied to the Extent it Circumvents §§ 330 and 331.

13.      Pursuant to §§ 330 and 331, the Court should deny the Debtor's request for permission to make monthly payments to Watley subject to subsequent court approval.   "Section 330 requires a review of the entire history of a Chapter 11 case to determine whether the professional services rendered were necessary in the administration of the estate, or otherwise beneficial to the estate, and whether the amount of compensation and reimbursement sought from the estate by such professionals is reasonable."   *In re Commercial Financial Services, Inc.*, 231 B.R. 351, 353 (Bankr. N.D. Okla. 1999); *see also*, 11 U.S.C. § 330.   Acknowledging "that review and allowance of compensation only at the conclusion of the case cause[s] an unwarranted financial hardship to professionals rendering services to the estate[,]".   Congress passed § 331, *see id.*, which allows professionals to apply for compensation "not more than once

every 120 days after an order for relief."  11 U.S.C. § 331.  Under § 331, the Court may permit more frequent applications but only to "professionals who present credible evidence that complying with the 120-day rule will impose serious financial hardship."  *Commercial Financial Services*, 231 B.R. at 357.

14.     Here, the Application does not allege, let alone show, that receiving compensation after submitting periodic applications under § 331 would impose a serious financial hardship upon Watley.  Nevertheless, the Debtor proposes to pay to Watley a $50,000 "consulting fee" on a monthly basis, subject only to subsequent final approval by the Court.  Rejecting a substantially identical payment scheme in *Gillette Holdings* the court held that "the Investment Bankers will be held to the same basic practice and standards of other professionals if they wish to be employed in this case; this includes filing informative, legally sufficient fee applications which allow for scrutiny and accountability as to the services rendered and fees requested." *Gillette Holdings*, 137 B.R. 452, 457 (citing 11 U.S.C. § 330(a)(1)).  Here, to the extent Watley is allowed to represent the Debtor, the Court should similarly reject the payment scheme proposed in the Application and require Watley to submit quarterly applications for compensation under § 331 if it wishes to receive interim payments from to the estate.

E.     The Application Should be Denied Because the "Consulting Fee" and the "Success Fee" are Excessive and Premature.

15.     "Section 330 establishes the exclusive means of allowing a claim for professional fees in a bankruptcy proceeding."  *In re Brown*, 371 B.R. 486, 498 (Bankr. N.D. Okla. 2007).  It authorizes only "reasonable compensation for actual, necessary services rendered" by the professional person.   11 U.S.C. § 330(a)(1)(A).  Pursuant to this provision, a retention agreement's "inclusion of an automatic success fee as a *fixed, definite, unqualified, contracted- for right* upon the occurrence of specified future events – coupled with a proposed fixed, definite, unqualified, contracted-for monthly fee . . . is unacceptable."  *Gillette Holdings*, 137 B.R. at 459 (emphasis in original).  Thus, in *Gillette Holding*, the Court refused to authorize

debtor's employment of investment bankers pursuant to a retention agreement that required payment of a flat fee plus a success fee in the event that a plan was confirmed.  The flat fee would be subject to § 330(a)(1)(A)'s reasonable compensation standard – it could be awarded after the fact if the professional in fact earned it.  *See Gillette Holdings*, 137 B.R. at 456-57. Similarly, the award of a "success fee" must "await a successful conclusion of the services and a proper showing of entitlement."  *Id.* at 459  (citation omitted).

16.     Here, like *Gillette Holdings*, the Debtor proposes to pay a flat monthly fee and a "success fee" to Watley, both of which could be completely unrelated to the actual, necessary services that Watley may provide to the Debtor.  The Application does not explain why a $50,000 monthly fee is commercially reasonable for the services that Watley will purportedly render to the estate.  It does not even detail with significant particularity what those services will be.  Similarly, the "success fee" of 5.25% is not connected to any services actually provided by Watley to the estate and, at a minimum, is duplicative of the $50,000 monthly fee.  If, for example, the Debtor borrows additional funds from existing creditors without Watley's assistance, Watley would still be entitled to 5.25% of those proceeds under the Retention Agreement.

17.     Moreover, Watley should not receive any "success fee" in connection with (a) funds advanced to the estate before August 2, 2010, when Watley filed its application, (b) funds advanced to the estate by creditors of the estate, or (c) funds advanced by Altus or Empire, both of which were involved with the Debtor well before Watley was hired.  Here the "success fee" is like a broker's commission, and Watley has done nothing to deserve any such commission in the foregoing situations.

18.     Like *Gillette Holdings*, this arrangement simply is unacceptable under § 330 and consequently, the Application should be denied.

F.    **The Application Should be Denied to the Extent Debtor Seeks Permission to Pay Any Administrative Expenses From Debtor-in-Possession Financing that is Obtained Over the Objection of the Senior Secured Creditors.**

19.    The Application should be denied to the extent it purports to bind the Debtor to pay Watley's fees from any potential debtor-in-possession financing that "primes" the Senior Secured Creditor's lien.  "[Section] 364(d)(1) does not authorize [a bankruptcy court] to prime [a secured creditor's] liens . . . to the extent that the loan proceeds are intended to be used to fund the debtor's operating expenses and to pay professional fees."  *In re Seth Co., Inc.*, 281 B.R. 150, 153 (Bankr. D. Conn. 2002).

20.    Here, the Debtor admits that it does not have unencumbered assets and that the Senior Secured Creditors are under-secured.  [*See* Schedules, Doc. No. 39, pgs. 1, 51 of 141.][5] Thus, the Debtor admits that it is unable to adequately protect the interest of the Senior Secured Creditors in connection with any priming loan under § 364(d).  The Debtor also admits that it is not operating a business or otherwise generating income, and that it does not have any cash collateral from which it could pay administrative expenses.  Consequently, the only potential source of cash to pay the administrative expenses, including Watley's fees, would be an unsecured cash infusion from the Debtor's principals (to which the Senior Secured Creditors do not object if the same is made under § 364(a)) or a post-petition loan obtained under § 364.  If the source of the post-petition cash is a loan obtained under § 364(d) over the objection of the Senior Secured Creditors and without adequate protection, however, then the Debtor cannot use the proceeds of the same to pay any of its administrative expenses, including Watley's fees.  The Application should be denied to the extent it requests otherwise.

G.    **Approval of Watley's Concurrent Representation of the Debtor and Copper King Should be Conditioned on No Future Finding of an Actual Conflict Between the Estates.**[6]

---

[5]    In its Summary of Schedules, the Debtor estimates that the total value of its assets is roughly $8.3 million.  [Doc. No. 39, pg. 1 of 141.]  In Schedule D, the Debtor admits that the Senior Secured Creditors (dubbed therein as the "First Lien Lender Group") hold a an non-contingent, liquidated and undisputed secured claim against the estate in excess of $30.4 million.  [See id. at pg. 51 of 141.]

[6]    The Debtor has filed a motion to substantively consolidate its and Copper King's estates.  That

21.    Section 327 states a two part analysis for the employment of professionals.  *In re Green Street*, 132 B.R. 460, 461 (Bankr. D. Utah 1991) (applying § 327 in the context of the employment of counsel).  First, the professional for the debtor must hold no adverse interest to the bankruptcy estate.  *See id.* Second, the professional must be a disinterested person.  *See id.* Applying this analysis in *Green Street*, this Court ruled that a firm could not concurrently represent three related debtors-in-possession even though the applications for employment stated that "applicants represent no adverse interest to any of the debtors or their estates and are disinterested within the [applicable provisions of the Code.]"  *Id.* at 461.  This Court held that "[t]he existence of a prepetition debt from one estate to the other creates a disqualifying conflict of interest."  *Id.* at 462.  The Tenth Circuit Court of Appeals agrees.  *See In re Interwest Business Equipment, Inc.*, 23 F.3d 311 (10th Cir. 1994).

22.    Here, like *Green Street* and *Interwest*, the Applications state that Watley concurrent representation of the Debtor and Copper King will not result in any conflicts.  The Application and supporting declaration state that the Debtor and Watley are not aware of any inter-company claims between the Debtor and Copper King.  The Application and the Declaration, however, do not say whether Watley or the Debtor have conducted any extensive analysis of potential inter-company claims, and, to date, the Debtor has not made sufficient disclosures in this case for other parties in interests to conduct any such analysis.  Because the Court and parties in interest lack sufficient information to determine whether an actual conflict exists, and because such a conflict could prevent the Debtor and Copper King from concurrently retaining Watley, Watley should not be allowed to unconditionally represent both entities, and any order permitting such a joint representation should be a conditional order that could

---

motion is pending as of the date of this Objection.  Should it be granted, then the concerns set forth in this section may be moot.

disallow, or require Watley to disgorge, any fees incurred or paid if an actual conflict is subsequently found to exist between the debtor entities.

## CONCLUSION

For the foregoing reasons, the Court should deny the Application.

DATED this 23rd day of August, 2010.

SNELL & WILMER LLP

/S/  DAVID E. LETA_____
David E. Leta
Engels Tejeda
*Attorneys for DDB Utah, LC; The Raymond W. Schmelzer Marital Trust; Top- Notch Investments, LLC; Rodney Evan Schmelzer; Brent Thomas Bingham; Bridge Loan Capital Fund, LP; DPI College, LC; Milford Copper Investors II, LLC; Reynolds Brothers, Inc.; and Milford Investors, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2010 I caused a true and correct copy of the foregoing to be served upon the following via electronic mail:

J. Thomas Beckett
Parsons Behle & Latimer
Email:  tbeckett@parsonsbehle.com

David P. Billings
Parsons Behle & Latimer
Email:  dbillings@parsonsbehle.com

Martin J. Brill
Levene, Neale, Bender, Yoo & Brill, L.L.P.
Email:  mjb@lnbyb.com

Glenn R. Bronson
Prince Yeates & Geldzahler
Email:  grb@pyglaw.com

Laurie A. Cayton
US Trustees Office
Email: laurie.cayton@usdoj.gov

Steven W. Dougherty
Anderson & Karrenberg
Email: sdougherty@aklawfirm.com

David B. Golubchik
Levene, Neale, Bender, Yoo & Brill L.L.P
Email: dbg@lnbrb.com

Mark H. Howard
Internal Revenue Service
Email:  mark.h.howard@irscounsel.treas.gov

David W. Hunter
Dixon Truman Fisher & Clifford, PC
Email:  davidh@dixontruman.com

Michael R. Johnson
Ray Quinney & Nebeker, P.C.
Email:  mjohnson@rqn.com

Adelaide Maudsley
Chapman and Ctler LLP
Email:  maudsley@chapman.com

Krikor J. Meshefejian
Levene, Neale, Bender, Yoo & Brill L.L.P
Email: kjm@lnbyb.com

Carolyn Montgomery
Callister Nebeker & McCullough
Email:  cmontgomery@cnmlaw.com

M. Eric Olmstead
Barney McKenna & Olmstead, PC
Email:  eolmstead@barney-mckenna.com

Mitchel H. Perkiel
Troutman Sanders
Email:  mitchel.perkiel@troutmansanders.com

Gerald H. Suniville
Van Cott Bagley Cornwall & McCarthy
Email:  gsuniville@vancott.com

United States Trustee
Email:  USTPRegion19.sk.ecf@usdoj.gov

Scott S. Bell
Parsons Behle & Latimer
Email:  sbell@parsonsbehle.com

Derek Langton
Parsons Behle & Latimer
Email:  dlangton@parsonsbehle.com

Justin E. Scott
Babcock Scott & Babcock
Email:  justin@babcockscott.com

Steven R. Skirvin
Dion-Kindem & Crockett
Email: srs@dkclaw.com

Bruce Thomas Beesley
Lewis & Roca, LLP
Email: bbeesley@lrlaw.com

Edmond "Buddy" Miller
Email: bmiller@buddymillerlaw.com

Michael J. Roeschenthaler
McGuire Woods
Email: mroeschenthaler@mcguirewoods.com

/S/ DAVID E. LETA
David E. Leta