MARTIN J. BRILL (Calif. Bar No. 53220) mjb@lnbyb.com
DAVID B. GOLUBCHIK (Calif. Bar No. 185520) dbg@lnbyb.com
KRIKOR J. MESHEFEJIAN (Calif. Bar No. 255030) kjm@lnbyb.com
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

*Proposed Reorganization Counsel for Chapter 11 Debtor and Debtor-in-Possession*

STEVEN R. SKIRVIN (Utah Bar No. 7626)
**DION-KINDEM & CROCKETT**
10808 S. River Front Parkway, Suite 334
South Jordan, UT  84095
Telephone: (801) 984-8045
Facsimile: (801) 984-4315
Email: srs@dkclaw.com

*Proposed Local Counsel for Chapter 11 Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

| | |
|---|---|
| In re: | Case No. 10-29159-WTT |
| Western Utah Copper Company, | Chief Judge William T. Thurman |
| Debtor and Debtor-in-Possession. | Chapter 11 |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364 AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Copper King Mining Corporation ("Copper King") and Western Utah Copper Company ("WUCC"), debtors and debtors in possession in their respective Chapter 11 bankruptcy cases (collectively, the "Debtors"), hereby move on an emergency basis (the "Financing Motion"), for entry of an order authorizing Debtors to borrow up to $18,000,000 (up to $650,000 following entry of an interim order and the balance following entry of a final order) on a senior secured lien, junior secured lien, and superpriority administrative claim basis from Altus Metals, LLC ("Altus") to enable the Debtors to commence operations of their business during the pendency of these cases.  A similar motion has been filed in Copper King's bankruptcy case.

Copies of the Amended Secured Note ("Note") and Amended Debtor-In-Possession Financing and Security Agreement (the "Security Agreement") are attached as Exhibits "E" and "F" to the Notice of Submission Of Documents filed in support of the Motion and concurrently herewith.

Pursuant to the Financing Motion, the Debtors seek a facility of up to $18 million, which will be secured by a superpriority and senior secured priming liens on the Debtors' assets, excluding certain pre-petition equipment, upon which Altus will receive a junior security interest.

The financing will be composed of three (3) categories:

A.      **Interim Advance**

Part of the foregoing financing includes an interim advance of up to $650,000 to fund immediate needs of the estates, the bases of which is discussed in detail in the accompanying motion for an order to schedule hearing on shortened time ("Motion for OST").  In summary, however, the Debtors require funding in advance of a hearing on regular notice to pay certain costs and obligations to preserve the assets of the estates, including, without limitation, security, insurance, maintenance and Board of Land Management fees.  A schedule of such

2

critical expenditures sought to be approved on an interim basis is set forth in Exhibit "__" to the Bryan Declaration.

As set forth in the Motion for OST, numerous payments must be received in cleared funds by August 31-September 1, 2010. In order to achieve the foregoing, the interim portion of the Financing Motion must be approved in advance of the foregoing deadline so that an order can be entered, documents finalized and advance made by Altus.

**B.      Repurchase of Sold Assets**

Pre-petition, in connection with the Debtors' efforts to raise funds for operations, the Debtors entered into a sale-leaseback type transaction with Empire and Strategic Capital (collectively, the "Pre-Petition Buyers") pursuant to which the Debtors transferred to the Pre-Petition Buyers certain rolling stock and equipment, certain water rights and certain mined, but unprocessed, ore (collectively, the "Sold Assets"). In exchange for the foregoing, the Debtors received approximately $2.2 million from the Pre-petition Buyers. A portion of the Financing Motion includes a repurchase of certain assets sold to the Pre-Petition Buyers.

Pursuant to the transaction contemplated by the Financing Motion, the Debtors will repurchase all of the Sold Assets from the Pre-Petition Buyers for $3,000,000, which will be advanced from the $18,000,000 commitment, resulting in a net available amount for operations of approximately $15,000,000 (less costs and fees). The Debtors have discussed with the Official Committee of Unsecured Creditors (the "Committee") the foregoing transaction and the possibility that such transaction may be avoided as a fraudulent conveyance. However, if the transaction is avoided as a fraudulent conveyance, the Pre-Petition Buyers would still be entitled to a secured claim for the consideration advanced, which the Debtors believe would be approximately $2.2 million. Altus declined to provide the financing contemplated by this Financing Motion without the repurchase being part and parcel of such transaction. To avoid the time, expense and uncertainty of litigation, as well

as the estates' immediate need for financing, the Debtors have concluded, in the exercise of their business judgment, that consummating the transaction contemplated herein is fair, reasonable and in the best interest of the estates and all creditors.

## C.      Operating Funds

The balance of the advance contemplated by the Financing Motion will be used for commencing operations (i.e., operating the mill to process and sell ore) as well as for continued drilling so that the reserves can be categorized as "proven" which is a prerequisite for the reserves to be bankable – that is, subject to financing and/or investment.  Pursuant to the projections attached to the Bryan Declaration filed concurrently herewith, the Debtors are confident that such operations will substantially increase the value of the assets of the estates for the benefit of all creditors.

Following an extensive and very active search of potential lenders/buyers/investors, the Debtos were unable to obtain credit on an unsecured basis.  The optimal entity that Debtors were able to negotiate an acceptable deal with is Altus, which is not an insider of Debtors, and which is willing to fund significant sums of cash to Debtors, but only on a senior secured, superpriority basis (except for certain pre-peition equipment, upon which Altus will receive a junior security interest).  Debtors submit that, given the circumstances, the Court should approve the proposed financing.

The Debtors further believe that all secured creditors will be adequately protected by such financing.  As discussed in detail in the accompanying pleadings, without the ability to process ore, its value in the ground is minimal.  The ability to process ore will greatly increase the value of the estates and their assets, providing adequate protection for existingcsecured creditors.  Moreover, continued drilling to comply with industry standards will frther enhance the value of the Debtors' reserves, proving further protection to secured

creditors.  Finally, the Debtors propose to provide the secured creditors with junior security

in the Sold Assets, thereby providing additional collateral for the secured creditors.

Following is a summary of the proposed financing terms from Altus:

| Material Provision | Brief Summary | Document/ Provision |
|---|---|---|
| Borrowers | The Debtors. | Note and Security Agreement |
| DIP Lender | Altus Metals, LLC, an Ohio limited liability company | Note and Security Agreement |
| Regular Interest Rate | 12.99%, compounded monthly | Note |
| Default Interest Rate | 5% per annum above the Regular Interest Rate | Note |
| Fees And Expenses | <u>Closing/Accommodation Fee</u>.  Debtors shall jointly and severally pay to Altus, from financing proceeds, a closing fee in cash, in an amount equal to two percent (2%) of the Capital Availability Amount, and upon any increase in the Capital Availability Amount the increased closing fee shall become due, and (2) Altus (or its nominee) shall be entitled to receive, and the Companies agree to issue or cause to be issued, no later than the effective date of any plan of reorganization of either Company or the Companies (or the date of sale of all or substantially all of the assets of one or both of the Companies to any entity (the "Purchasing Entity")), a loan accommodation fee equal to a stock warrant for that amount of fully paid and nonassessable common stock (or any other securities or equity interests into which or for which any of the common stock or equity interests may be converted or exchanged pursuant to a plan of recapitalization, reorganization, merger, sale of assets or otherwise) (such common stock or other equity interests referred to herein as, the "Equity") totaling Five Percent (5%) of the total Equity of reorganized Copper King and/or reorganized WUCC and/or the Purchasing Entity, as the case may be, for the initial Loan of Seven Million Dollars ($7,000,000), and an additional one percent (1%) of the total Equity of reorganized Copper King and/or reorganized WUCC and/or the Purchasing Entity, as the case may be, for each One Million Dollars ($1,000,000) borrowed in addition to the initial Loan. | Security Agreement, Section 5(b) |

| Material Provision | Brief Summary | Document/ Provision |
|---|---|---|
| | <u>Expenses.</u>  The Debtors shall jointly and severally reimburse Altus, from proceeds of the financing, for its expenses (including reasonable legal fees and expenses) incurred in connection with the preparation and negotiation of the DIP Documents, and expenses incurred in connection with Altus' due diligence review of the Debtors and all related matters. Debtors shall pay any fee due Empire Advisors in connection with any Loans. Amounts due on the Closing Date will be paid on the Closing Date and shall be equal to (x) Altus's actual costs and expenses, inclusive of anticipated reasonable internal and outside legal fees, <u>plus</u> (y) the cost of all third-party appraisals and extraordinary diligence deemed advisable or prudent by Altus <u>less</u> (z) a credit for the Fifty Thousand Dollar ($50,000) expense reimbursement granted to Altus by the Nevada Court in connection with the Emergency Advance (the "Closing Reimbursements").  In addition, during the term hereof, Altus may pay all legal and other professional fees incurred by Altus upon submission by such professionals of a written invoice to Altus, whether or not reflected in or in excess of the amount set forth in any Budget, and without the need of fee applications or other submissions to the Bankruptcy Court or otherwise, and all such payments shall constitute Loans. Altus shall deliver to the Debtors copies of all invoices by professionals submitted to Altus with respect to which proceeds of Loans have been applied, which invoices may be redacted to protect privileged information.<br><br><u>Unused Facility Fee</u>.  If Debtors do not utilize the entire Capital Availability Amount within six (6) months of the Closing Date and provided that Altus has not denied to the Debtors access to such Capital Availability Amount when Debtors have satisfied closing conditions, then Debtors shall be charged an unused facility fee equal to two percent (2%) of the unused portion of the Capital Availability Amount. | |
| Maturity | September 8, 2011. | |
| Liens, Collateral, And Priority<br><br>Bankruptcy Rule 4001(c)(1)(B)(i), (vii) & (xi)<br><br>Local    Rule | (a)       The priority of the Liens granted to Altus on the Collateral of each Debtor shall be senior and prior to all of each Debtor's Prepetition Indebtedness and Postpetition Indebtedness (subject to the Carve Out and the Marshalling Agreement, see "Repurchase and Marshalling" below).<br><br>(b)       The priority of the Liens granted to Altus on the Prepetition Equipment of each Debtor shall be junior to all of each Debtor s Prepetition Indebtedness. | Security Agreement, Sections 6 and 7 |

| Material Provision | Brief Summary | Document/ Provision |
|---|---|---|
| 4001-2 (a)(1)(D) and (G) | (c)      All Obligations shall constitute allowed superpriority administrative expense claims of each Debtor in the Chapter 11 Cases pursuant to Section 364(c)(1) of the Bankruptcy Code (as to the Collateral) having priority over any and all administrative expenses of the kind specified in or incurred pursuant to Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c) or 726 of the Bankruptcy Code ("**Superpriority Claims**") and shall at all times be senior to the rights of each Debtor, its estate, and any successor trustee or estate representative in the Chapter 11 Case or any subsequent proceeding or case under the Bankruptcy Code, in any case subject only to Permitted Exceptions, provided that such Obligations shall be junior to existing security interests in and to the Prepetition Equipment. | |
| Events of Default | See Section 25 of Security Agreement for extensive list of Events of Default.

See Section 26 of Security Agreement for discussion of remedies upon the occurrence of Events of Default.

See Section 27 of Security Agreement for discussion of opportunity to cure Events of Default. | Security Agreement, Section 25 |
| Automatic Stay

Bankruptcy Rule 4001(c)(1) (B)(iv) | Except as set forth in the Financing Orders, no rights or remedies available to Altus shall require any application or motion to, or order of, the Bankruptcy Court; provided, however, that enforcement of rights or remedies against the Collateral or Prepetition Equipment shall require five (5) Business Days' notice to the Company Agent, to the United States Trustee, to counsel for any statutory committee, with a copy of such notice to be filed with the Bankruptcy Court and, if any hearing shall be requested after delivery of such notice (which request shall be made within three (3) Business Days' after the date of such notice, by way of objection), the sole issue to be determined at such hearing shall be whether an Event of Default has occurred. Except as otherwise provided in the Financing Orders, subject to the calendar of the Bankruptcy Court, any such hearing requested shall be permitted on shortened time, on the earliest available date. | Security Agreement, Section 26(b) |
| Profession- al And Statutory Fee Carve- | Altus consents to the application by either Debtor for entry of an administrative procedures order that will allow all professionals to be paid their customary percentage of their reasonable | Security Agreement, Section 6(d) |

| Material Provision | Brief Summary | Document/ Provision |
|---|---|---|
| Out<br><br>Section 506(c) Waiver<br><br>Bankruptcy Rule 4001(c)(1) (B)(x)<br><br>Local Rule 4001-2 (a)(1)(B) | professional fees on a monthly basis, so long as aggregate payments do not exceed the availability for such professionals under the Carve Out ($1,000,000), and Altus reserves all of its rights to object to the reasonableness of such professional fees pursuant to, *inter alia*, Section 330 of the Bankruptcy Code and does not waive any rights, requirements or procedures with respect to approval of such fees.<br><br>The Debtors waive all rights to seek to surcharge Altus' Prepetition Collateral and Collateral pursuant to Section 506(c) of the Bankruptcy Code. | Security Agreement, Section 6(e) |
| Indemnification<br><br>Bankruptcy Rule 4001(c)(1) (B)(ix) | Each Company hereby jointly and severally indemnifies and holds Altus, and its respective affiliates, employees, attorneys and agents (each, an "**Indemnified Person**"), harmless from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses of any kind or nature whatsoever (including attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) which may be instituted or asserted against or incurred by any such Indemnified Person as the result of credit having been extended, suspended or terminated under this Agreement or any of the DIP Documents or with respect to the execution, delivery, enforcement, performance and administration of, or in any other way arising out of or relating to, this Agreement, the DIP Documents or any other documents or transactions contemplated by or referred to herein or therein and any actions or failures to act with respect to any of the foregoing, except to the extent that any such indemnified liability is finally determined by a court of competent jurisdiction to have resulted solely from such Indemnified Person's willful misconduct. NO INDEMNIFIED PERSON SHALL BE RESPONSIBLE OR LIABLE TO ANY COMPANY OR TO ANY OTHER PARTY OR TO ANY SUCCESSOR, ASSIGNEE OR THIRD PARTY BENEFICIARY OR ANY OTHER PERSON ASSERTING CLAIMS DERIVATIVELY THROUGH SUCH PARTY, FOR INDIRECT, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES WHICH MAY BE ALLEGED AS A RESULT OF CREDIT HAVING BEEN EXTENDED, SUSPENDED OR TERMINATED UNDER THIS AGREEMENT OR ANY DIP DOCUMENT OR AS A RESULT OF ANY OTHER TRANSACTION CONTEMPLATED HEREUNDER OR THEREUNDER. | Security Agreement, Section 33 |

| Material Provision | Brief Summary | Document/ Provision |
|---|---|---|
|  | Each Company hereby jointly and severally indemnifies and holds each Indemnified Person harmless from and against the increased cost of capital resulting from reserve requirements or otherwise imposed, in each case subject to customary increased costs, capital adequacy and similar provisions. |  |
| Repurchase and Marshalling | Debtors shall purchase or repurchase from Altus and/or its affiliates and co-owners, in accordance with the terms hereof ("**Repurchase**"), those assets purchased from Debtors and certain third parties in connection with the Prepetition Agreements that are utilized in connection with Companies' operations, including but not limited to certain water rights and equipment ("**Assets**"). The combined purchase price for such Assets shall be Three Million and No/100 Dollars ($3,000,000.00), representing a discount from the repurchase option and other Prepetition obligations to Altus and its affiliates in the amount of over One Million Two Hundred Thousand and No/100 Dollars ($1,200,000.00). In connection with the Repurchase, Altus and its affiliates and co-owners shall release all other Liens they hold on any other properties or assets of Companies ("**Repurchase Collateral**"), and any and all Prepetition obligations, claims and agreements with Altus and its relevant affiliates and co-owners, including but not limited to those held by Strategic Capital Partners, LLC and Winterfox, L.L.C., shall be terminated and released. The priming super priority Liens granted to Altus shall apply to all Assets and Repurchase Collateral.<br><br>If Altus exercises or enforces the Liens granted under the DIP Documents or by the Bankruptcy Court, Altus must first enforce its Liens with respect to the Assets and Repurchase Collateral to the fullest extent practicable prior to enforcing its Liens with respect to any other Collateral, Prepetition Equipment or property ("Marshalling Agreement"). | Security Agreement, Section 16 |

The relief sought in the Motion is based upon the Motion, the accompanying Memorandum of Points and Authorities, the Declarations of A. John A. Bryan, Jr., David McMullin, David Hartshorn, O. Jay Gatten, Michael G. Nelson, Ph.D., as well as three (3) individuals employed by Tetra Tech, Inc. – D. Erik Spiller, Thomas W. Payne, and Stephen

A. Krajewski, the statements, arguments and representations of counsel to be made at the hearing on the Financing Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

WHEREFORE, Debtors respectfully request that this Court: (1) enter an interim order approving the interim financing requests made by Debtors pursuant to the Financing Motion; (2) authorize Debtors to borrow up to $650,000 from Altus on an interim basis in accordance with the terms set forth above and in the Financing Order; (3) authorize Debtors to execute all documents (including all loan and security agreements, promissory notes and related documents) necessary to enable Debtors to implement the terms of the Financing Order; (4) schedule a final hearing on the Motion to authorize Debtors to borrow the remaining balance up to total borrowings of $18,000,000; and (5) grant such other and further relief as the Court deems just and proper.

Dated:  August 23, 2010

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By:___/s/ Martin J. Brill_____
          Martin J. Brill
          Proposed Reorganization Counsel for
          Chapter 11 Debtor and Debtor in Possession

DION-KINDEM & CROCKETT

By:___/s/ Steven Skirvin_____
          Steven Skirvin
          Proposed Local Counsel for
          Chapter 11 Debtor and Debtor in Possession