MARTIN J. BRILL (Calif. Bar No. 53220) mjb@lnbyb.com
DAVID B. GOLUBCHIK (Calif. Bar No. 185520) dbg@lnbyb.com
KRIKOR J. MESHEFEJIAN (Calif. Bar No. 255030) kjm@lnbyb.com
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
*Reorganization Counsel for Chapter 11 Debtors and Debtors-in-Possession*

STEVEN R. SKIRVIN (Utah Bar No. 7626)
**DION-KINDEM & CROCKETT**
10808 S. River Front Parkway, Suite 334
South Jordan, UT 84095
Telephone: (801) 984-8045
Facsimile: (801) 984-4315
Email: srs@dkclaw.com
*Local Counsel for Chapter 11 Debtors and Debtors-in-Possession*

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy No. 10-29159 WTT |
| WESTERN UTAH COPPER COMPANY, et al., | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with Case No. 10-30002 WTT) |
| | Honorable William T. Thurman |
| | **Filed Electronically** |

**MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION FOR
AUTHORITY TO OBTAIN FINANCING ON AN UNSECURED
<u>SUPERPRIORITY ADMINISTRATIVE CLAIM BASIS</u>**

1

4671

Western Utah Copper Company ("Western Utah" or the "Debtor") and Copper King Mining Corporation ("Copper King"), the jointly administered Chapter 11 debtors and debtors in possession (collectively the "Debtors") hereby file their Memorandum of Law in support of the motion for entry of an order authorizing the Debtors to borrow up to $400,000 (the "Loan") from Equity Security Funders, LLC (the "Lender") for the purpose of paying, among other expenses which may arise in the future and for which the Lender may agree to provide further funds to the Debtors, certain obligations related to a further extension of the Western Utah's deadline to assume or reject its nonresidential real property leases. The Lender is owned by various members of the Committee of Equity Security Holders. The Debtors propose to treat the Loan as an allowed superpriority administrative expense claim pursuant to 11 U.S.C. Section 364(c)(1) having superpriroity over all other administrative expenses except for the existing allowed superpriority expense claims of Altus Metals, LLC pursuant to Court-approved debtor-in-possession loans obtained from Altus during the Debtors' bankruptcy cases. With respect to Altus' superpriority claims, the Loan will be junior in priority. The terms of the proposed Loan are the best terms the Debtors have been able to obtain, and unsecured financing on an administrative claim basis (without superpriority) has not been made available to the Debtors. The Debtors are required to make certain lease payments totaling $39,875 by December 28, 2010. The Loan would help ensure that the leases are preserved for the benefit of the estate while the Debtors attempt to reorganize their financial affairs, as well as pay other future expenses of the estate subject to the approval and consent of the Lender. Accordingly, the Debtors submit that this Motion should be granted.

4671

**STATEMENT OF RELEVANT FACTS**

1. On May 18, 2010 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing Voluntary Petitions under Chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtors originally filed their bankruptcy cases in the United States District Court for the District of Nevada (the "Nevada Court").

2. On July 8, 2010, pursuant to the Nevada Court's *sua sponte* ruling, the Western Utah Debtor's case was transferred to this Court (the "Utah Court"). Subsequent to that ruling, Copper King requested that the Nevada Court also transfer its case to the Utah Court. On July 26, 2010, the Copper King case was also transferred to this Court.

3. The Debtor engages in exploration, development, extraction, and processing of metals, including copper, silver, and gold, from its extensive mineral resources located in and around the Milford Mineral Belt in Beaver County Utah. Since 2003, the Debtor had assembled an impressive mining property which consolidated a large region of the Milford Mineral Belt, a large mineral rich area in western Utah. The Debtor now owns or controls approximately 100,000 acres of mineral rights, primarily in the Milford, Utah region. Many of these claims had been successfully mined previously, but no one was able to consolidate this region into one company and build an ore processing mill due to the fractured mining claims. The Debtor succeeded in consolidating 635 Bureau of Land Management un-patented mining claims covering nearly 60,000 acres of land. The Debtor had also built a "floatation" ore processing mill (the "Mill") which it ran and operated in 2009 and 2010 prior to filing for Chapter 11.

4671

4. As an owner and operator of numerous mines, the Debtor is a party to a number of leases either in direct privity with the respective lessors or by way of assignments, including leases of patented mining claims, unpatented mining claims, and leases with the State of Utah (collectively, the "Leases"). The Debtor is a lessee or sublessee to the Leases which grant mining rights to the Debtor. The Leases consist of:

    a. Mining Lease And Option Agreement, dated May 5, 1990, and amended pursuant to that certain Amendment To Mining Lease And Option Agreement, dated April 1, 2004 (the "Bealer Lease")

**Lessor: Alfred W. Bealer**

**Sublessors: Cortex Mining & Exploration Co., Inc., Nevada Star Resource Corporation**

    b. Lease Agreement, dated February 3, 1994 (part

**Lessors: Jane Glines, Milton P. Calder, Bernard O'Toole, Joyce O'Toole, Mick Robis, Dick Burbidge, Doug Holbrook, Stephen Mitchell**

**Sublessors: Cortex Mining & Exploration Co., Inc., Nevada Star Resource Corporation**

    c. Mining Lease, dated April 28, 1994 ("Horn Silver Mine Lease 1")

**Lessor: Horn Silver Mines, Inc.**

**Sublessors: Dotson Exploration Co., Nevada Star Resource Corporation**

    d. Mining Lease Agreement, dated October 30, 1995 (the "AJL Lease")

**Lessor: A.J.L. Corporation**

**Sublessors: Cortex Mining & Exploration Co., Inc., Nevada Star**

4

**Resource Corporation**

e. Mining Lease, dated February 1, 1997

**Lessor: Horn Silver Mines, Inc.**

**Sublessors: Dotson Explorations Company, Nevada Star Resource Corporation**

f. Mineral Lease And Option To Purchase Agreement, dated December 19, 2002 ("Horn Silver Mine Lease 2")

**Lessor: Horn Silver Mines, Inc.**

g. Mineral Lease And Option To Purchase Agreement, dated July 27, 2004 (the "McCulley Lease")

**Lessor: Gilbert A. McCulley, D. Carol McCulley, Grant Wood, and Gayle Wood**

5. Pursuant to 11 U.S.C. § 365(d)(4), the Debtor was required to assume or reject the Leases within 120 days of the commencement of the Debtor's chapter 11 case (*i.e.*, by September 15, 2010), unless such time period is extended. At the conclusion of a hearing held on September 8, 2010, this Court extended the deadline for the Debtor to assume or reject the Leases through and including December 15, 2010.

6. The Debtor thereafter filed its motion to further extend the foregoing deadline through and including March 15, 2011. In support of that motion, the Debtor provided the Court with written consents of lessors agreeing to the foregoing extension provided that certain payments be made to lessors by December 15, 2010, as set forth in the following chart:

5

4671

| Lease | Post-petition amount due | Payment to extend deadline (25%) |
|---|---|---|
| McCulley | $100,000 | $25,000 |
| King Bird Klondike | $7,500 | $1,875 |
| Horn Silver 1 | $35,000 | $8,750 |
| Bealer | $10,000 | $2,500 |
| Bogdanich (AJL) | $7,000 | $1,750 |
| Total | $159,500 | **$39,875 (the "Lessor Payment")** |

7. At the December 14, 2010 hearing on the motion to extend, the Debtor advised the Court that it did not have sufficient funds to make the foregoing payments but that certain members of the Equity Committee had agreed to assist the Debtor in obtaining necessary funding to the Debtor to make the required payments, with such funding to be entitled to Chapter 11 administrative claim priority. In connection with the foregoing, the lessors have agreed to extend the payment deadline to December 28, 2010.

8. In light of the foregoing schedule, at the December 14, 2010 hearing, the Court scheduled December 23, 2010 at 10:00 a.m. as the date and time for a hearing on such financing request.

9. The proposed financing is relatively simple. With the exception of the Lessor Payment, the Lender has no obligation to pay any further funds to the Debtors, but may do so pursuant to 11 U.S.C. § 364(c)(1) in an amount not to exceed a total amount of $400,000.00 inclusive of the Lessor Payment. Any sums advanced by the Lender pursuant to the proposed order attached hereto as Exhibit "1" shall be (a) entitled to super-priority

administrative expense status in accordance with 11 U.S.C. § 364(c)(1), with priority over any or all administrative expenses of the kind specified in 11 U.S.C. § 503(b) or 507(b), (b) with such claim being junior only to any allowed super-priority administrative expense claim that may be asserted by Altus Metals, LLC against Western Utah Copper Company pursuant to the orders that have previously been entered in this case. By agreeing to such treatment, the Lender is not stipulating that there is any such claim and reserves all of its rights regarding the allowance of any claim senior in priority to its proposed claim under the Loan. Any and all sums advanced by the Lender pursuant to the proposed order, including any sums that are paid by the Lender directly to a vendor on the Debtors' behalf, shall be itemized by the Debtors in their Monthly Operating Reports that are filed with the Court.

10.  The Lender shall have no obligation to fund any expense payments unless it determines that it is appropriate to do so, but the Lender will provide funds to make the payments under the Leases required to be made to extend the deadline to assume or reject the Leases. The Debtor understands that, when appropriate, the Lender will want to make payments directly to vendors on the Debtors' behalf and that this will be considered an extension of credit under the terms of the Loan. Furthermore, to get funding, the Debtors will need to give the Lender sufficient notice of the need for cash so that a decision to fund can be appropriately vetted. All requests for funding will require the Debtors to show the specific vendor for which payment is sought (including copies of any invoices), the rationale for making the payment at the time requested, and that the Debtors do not have sufficient cash to make the payment. Separate accounting should be kept by the Debtors of the payments made by the Lender and attached to the Debtors' monthly operating reports.

Finally, if cash is requested to employ consultants, such as environmental or mining consultants, the Lenders will not provide funding unless the Committee of Equity Security Holders has been given the opportunity to determine that the consultant is one that it approves.

11. The Debtors believe that such financing is necessary and proper in light of the circumstances in this case and the need to preserve the subject Leases. No other financing has been made available to the Debtors. As the Court is aware, the only other form of financing that has ever been made available to the Debtors is financing on a senior secured and superpriority basis. Such financing has previously been provided to the Debtors, but this Loan is not being made on a senior secured basis. Rather, this Loan is a wholly unsecured loan entitled to superpriority treatment which the Debtors submit is appropriate under the circumstances, where no alternative financing is available on better terms.

## COMPLIANCE WITH RULE 4001

Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure, Debtors hereby provide the following disclosures with respect to the Loan:

| Material Provision | Brief Summary |
| --- | --- |
| Borrower | The Debtors |
| Lender | Equity Security Funders, LLC |
| Regular Interest Rate | N/A |
| Default Interest Rate | N/A |
| Fees And Expenses | N/A |
| Maturity | N/A |
| Liens, Collateral, And Priority  Bankruptcy Rule 4001(c)(1) (B)(i), (vii) & (xi) | Superpriority pursuant to 11 U.S.C. § 364(c)(1), except that the Loan will be junior in priority to the superpriority claims of Altus Metals, LLC arising from prior debtor-in-possession |

| Material Provision | Brief Summary |
|---|---|
| Local Rule 4001-2 (a)(1)(D) and (G) | financing provided to the Debtors by Altus |
| Events of Default<br><br>Automatic Stay<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) | N/A<br><br>N/A |
| Professional And Statutory Fee Carve-Out<br><br>Section 506(c) Waiver<br><br>Bankruptcy Rule 4001(c)(1)(B)(x)<br><br>Local Rule 4001-2 (a)(1)(B) | N/A<br><br><br><br>N/A |
| Indemnification<br><br>Bankruptcy Rule 4001(c)(1)(B)(ix) | N/A |

## ARGUMENT

**A.    The Debtors Should Be Authorized To Obtain The Loan To Preserve Valuable Leases.**

Pursuant to Section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interest of the estate. See, e.g., In re Simasko Production Co., 47 B.R. 444, 448-9 (D. Colo.1985) (authorizing interim financing agreement where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) ("Ames") (with respect to post-petition credit, courts "permit

debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"). Section 364(c) provides, in pertinent part, that:

> (c)  If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable-under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> > (1)  with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:
> >
> > (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or
> >
> > (3)  secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

11 U.S.C. § 364(c); In re Utah 7000, LLC; 2008 WL 2654919 (Bkrtcy. D.Utah 2008)

Section 364 of the Bankruptcy Code is structured with an escalating series of inducements which a debtor in possession may offer to attract credit during the post-petition period. In re Photo Promotion Associates, Inc., 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d. Cir. 1989). Where a trustee or debtor in possession cannot otherwise obtain unsecured post-petition credit, such credit may be obtained under certain carefully proscribed conditions. In re T.M. Sweeney & Sons LTL Services, Inc., 131 B.R. 984, 989 (Bankr.N.D.Ill.1991). For example, if creditors are unwilling to extend unsecured credit pursuant to Section 364(b) of the Bankruptcy Code to a debtor in possession, further inducements are offered, with court approval after notice and a hearing, including, without limitation, liens equal to or senior to existing liens on encumbered property in accordance with 11 U.S.C. § 364(d). In re Photo Promotion Associates, Inc., 87 B.R. at 839.

Two factors courts consider in determining whether to authorize post-petition financing which contemplates the granting of a superpriority claim in favor of the lender are (1) whether the debtor is unable to obtain unsecured credit per 11 U.S.C. § 364(b), i.e., by allowing a lender only an administrative claim per 11 U.S.C. § 364(b)(1)(A); and (2) whether the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.  In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D.Pa. 1987); see also In re Aqua Assoc., 123 B.R. 192, 195 (Bankr. E.D.Pa. 1991).

The Debtors submit that all of these standards have been satisfied in this case.

1.      Debtors Were Unable To Obtain Unsecured Credit Under Section 364(b).

In satisfying the standards of Section 364, a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of credit available under § 364(a) and (b).  See, e.g., In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee had demonstrated by good faith effort that credit was not available without senior lien by unsuccessfully contacting other financial institutions in immediate geographic area; "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); Ames, supra, 115 B.R. at 40 (finding that debtors demonstrated the unavailability of unsecured financing where debtors approached four lending institutions).

To date, the Court has found on two separate occasions that financing on an unsecured basis is not available to the Debtors.  Indeed, on two prior occasions, this Court has allowed the Debtor to borrow funds from Altus Metals, LLC, on a senior secured and superpriority basis.  The Debtors submit that the circumstances of this case have not changed in that unsecured credit pursuant to 11 U.S.C. § 364(b) is still not available to the Debtors.  The accompanying Declaration of David McMullin discusses

4671

the Debtors' inability to obtain financing on terms and conditions more favorable than that being proposed by the Lender.

2. <u>The Terms Of The Proposed Financing Are Fair, Reasonable and Adequate</u>.

The terms proposed by the Lender are the best available to the Debtors. The Lenders are not charging any interest, there is no set maturity date (since maturity is hinged upon contingencies such as the confirmation of a plan of reorganization), and the superpriority claim being requested will be junior to the existing superpriority post-petition financing claims of Altus. The Loan will be utilized to ensure the preservation of the Leases while the Debtors continue to formulate a reorganization of their financial affairs. Unless payment is made by December 28, 2010, the Leases will be deemed rejected, to the detriment of the Debtors and their bankruptcy estate, including all creditors and parties in interest. Accordingly, the Loan is vital to the Debtors' reorganization efforts, and, as discussed above, fair and reasonable under the circumstances. Accordingly, the Motion should be granted.

## CONCLUSION

**WHEREFORE**, Debtors respectfully request that this Court: (1) approve the Motion in its entirety; (2) authorize the Debtors to borrow up to $400,000 from Lender on the terms and conditions enumerated in the proposed order attached hereto as Exhibit "1"; and (3) grant such other and further relief as the Court deems just and proper.

Dated: December 20, 2010

                                **LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**

                                By:   */s/ Krikor J. Meshefejian*
                                      Martin J. Brill
                                      David B. Golubchik
                                      Krikor J. Meshefejian
                                      Reorganization Counsel for

4671

                              Chapter 11 Debtors and Debtors in Possession

**DION-KINDEM & CROCKETT**

By: */s/ Steven Skirvin*
      Steven Skirvin
      Local Counsel for
      Chapter 11 Debtors and Debtors in Possession

4671