MARTIN J. BRILL (Calif. Bar No. 53220)
DAVID B. GOLUBCHIK (Calif. Bar No. 185520)
KRIKOR J. MESHEFEJIAN (Calif. Bar No. 255030)
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

DION-KINDEM & CROCKETT
Steven R. Skirvin (Utah Bar No. 7626)
srs@dkclaw.com
10808 S. River Front Parkway, Suite 308
South Jordan, UT  84095
Telephone: (801) 984-8045
Facsimile: (801) 984-4315

*Attorneys for Plaintiff Western Utah Copper Company*

## IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re | Bankruptcy Case No.  10-29159-WTT |
| **WESTERN UTAH COPPER COMPANY, et al.** | (Jointly Administered with Case No. 10-30002 WTT) |
| Debtors and Debtors in Possession. | Chief Judge William T. Thurman |
| | Chapter 11 |
| WESTERN UTAH COPPER COMPANY, Plaintiff, vs. | Adv. Pro. No. 10-02856 |
| EDWIN REESE DAVIS, et al. Defendants. | **[Filed Electronically]** |

## DECLARATION OF DAVID McMULLIN IN SUPPORT OF DEBTORS' MOTION FOR ORDER COMPELLING TURNOVER OF PROPERTY OF THE ESTATE

I, David McMullin, hereby declare as follows:

1.      I am a director and the vice president of Western Utah Copper Company, Chapter 11 debtor and debtor in possession in this bankruptcy case ("WUCC"). I am also an officer and director of Copper King Mining Corporation ("Copper King" or "CKMC" and collectively with WUCC, the "Debtors").

2.      I am a senior-level executive with extensive finance and administration experience in diverse industries, including retail, financial and mining. I have strong qualifications in general management, business planning, systems technology design, and staff development and project implementation.

3.      I have been a full time employee of WUCC since September 1, 2008. Prior to full time employment, I was employed on a contract basis with WUCC as a Vice President of Special projects. My responsibilities have included, and currently include, direct management of WUCC's numerous professional relationships with attorneys, engineers. As a former Vice President of Operations, I was responsible for the review and negotiation of contracts, management and oversight of WUCC, including its mining, milling, permitting and geology teams. I was also responsible for marketing of concentrates and other valuable ores, such as magnetite. I am also involved in strategic planning for WUCC, as well as employee compensation and review. Based on my experience with the Debtors, I believe that I am intimately familiar with the Debtors' finances and operations.

## A.    Background of Cases

4.      On May 18, 2010 (the "Petition Date"), the Debtors commenced their respective bankruptcy cases ("Cases") by filing Voluntary Petitions under Chapter 11 of the Bankruptcy

Code (the "Petition Date"). The Debtors originally filed their bankruptcy cases in the United States District Court for the District of Nevada (the "**Nevada Court**").

5.      On July 8, 2010, pursuant to the Nevada Court's sua sponte ruling, Western Utah's case was transferred to this Court (the "**Utah Court**"). Subsequent to that ruling, Copper King requested that the Nevada Court also transfer its case to the Utah Court. On July 26, 2010, the Copper King case was also transferred to this Court. The Debtors' cases were thereafter ordered to be jointly administered by this Court.

**B.      Davis Parties**

6.      Prior to the Petition Date, the Debtors employed Davis Accounting Group ("DAG") as their accountant and auditor, as well as the Chief Financial Officer of the Debtors. The foregoing employment by the Debtors was based on representations by DAG and Edwin Reese Davis ("Davis" and collectively with DAG, the "Davis Parties") that DAG and Davis are experienced, qualified and licensed as Certified Public Accountants in the state of Utah.

7.      After the Petition Date, the Debtors employed Davis, in his individual capacity, as the Debtors' Chief Financial Officer.

8.      In their role as accountants, auditors and CFO of the Debtors, the Davis Parties received possession of the Debtors' books and records, including raw data prepared by Defendants for the benefit of the Debtors, employee's payroll records, W-2 forms and vehicle certificates of title and registrations (collectively, the "Debtors' Records").

9.      After the Petition Date, pending the opening of Debtor-In-Possession bank accounts, DAG deposited certain of the Debtors' funds, totaling $53,036.43 in DAG's client trust account (collectively, the "Debtors' Funds"). True and correct copies of the checks constituting

the Debtors' Funds, with proof of endorsement by DAG, are attached to the accompanying Declaration of David McMullin ("McMullin Declaration") collectively as Exhibit "A".

10.     During the pendency of his employment as CFO of the Debtors, Davis demanded that the Debtors pay to DAG all amounts owed for pre-petition services rendered by DAG through the assumption of DAG's pre-petition employment agreement.

11.     Based on the Debtors' refusal to pay post-petition for pre-petition debt and its refusal to assume the pre-petition agreement, Davis took possession of the Debtors' Records and refused to turn such records over to the Debtors.

12.     Based on the Debtors' refusal to pay post-petition for pre-petition debt and its refusal to assume the pre-petition agreement, Davis refused to turn over the Debtors' Funds to the Debtors.

13.     Based on Davis' wrongful actions, Davis' employment with the Debtors was terminated by the Debtors.

14.     I have made numerous demands for turnover of the Debtors' Records and Debtors' Funds upon the Davis Parties.  At all times, the Davis Parties refused to turn over such assets until and unless the Davis' Parties' pre-petition claims are paid.

**C.     Recent Developments With Respect To Davis Parties**

15.     Through my continuing investigations, including Utah Division of Occupational and Professional Licensing (http://www.dopl.utah.gov/), I discovered that DAG and Davis are not licensed by the state of Utah as Certified Public Accountants.  See Exhibit "B" hereto.

16.     Additionally, my investigations revealed that DAG has an "F" rating from the Better Business Bureau for "failure to obtain a required competency license." See Exhibit "C" hereto.

17.     My online search of DAG also revealed an inspection of DAG conducted by Public Company Accounting Oversight Board finding that severe deficiencies exist with respect to DAG's auditing practices. See Exhibit "D" hereto.

18.     I also learned that on or about December 21, 2010, Davis was arrested "on a warrant charge of fugitive from justice out of Montana." See Exhibit "E" hereto. According to the report, Davis was arrested for allegedly issuing "bad checks."

19.     Finally, within 48 hours of filing this Motion, I learned that the Davis Parties have been attempting to sell the Debtors' Records to third parties for payment of their fees. For example, attached hereto as Exhibit "F" is a copy of an email from Davis to the chair of the equity committee, which was forwarded to me, pursuant to which Davis acknowledges possession of the Debtors' Records and the need of turning over records to complete a plan of reorganization and allow employees to complete their 2010 tax returns, but proposes to turn over such records to the equity committee in exchange for payment of fees. Davis also seeks a position as the CFO of the reorganized entity, believing that the equity committee will be in charge of the process.

20.     I believe that the Davis Parties' actions have been egregious, malicious and in violation of the automatic stay. While the Debtors intend to pursue litigation to reach the damages stage, based on Davis' recent arrest and his attempt to sell Debtors' Records to third parties, I am concerned that property of the estate may be lost or destroyed. As a result, I hereby

seek an order of this Court compelling the Davis Parties to immediately turn over the Debtors'

Records and Debtors' Funds and account for all such assets.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct to the best of my knowledge. Executed this 10th day of February, 2010

in Milford, Utah.

   /S/ David McMullin      <br>
DAVID McMULLIN

# EXHIBIT A

Page 1





| Posting Date | Posting Account | Amount | Serial No. | Sequence No. | CD Volume |
|---|---|---|---|---|---|
| 6/24/2010 | 2079900400221 | $17066.43 | 2377027 | 1751214440 | 10070217312901 |
| Issue Date | | | | | |

Wachovia National Bank certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia National Bank or its predecessors.





RECEIVED E-Mail

AUG 2 6 2010

Div. of Oil, Gas & Mining

# EXHIBIT B

# Utah Division of Occupational and Professional Licensing

## Search Results

PLEASE NOTE: In some professions, licensees may advance from a lower level of licensure to a higher one with a broader scope of practice. In such cases, the search results listed below for the lower level of licensure will show a status of expired, null and void, superseded, or another similar status. Therefore it is important for you to search the results of all licenses shown before assuming a particular licensee does not hold a current license.

Click the Licensee Name to view details.

| Licensee Name | City | Profession | License # | Status |
|---|---|---|---|---|
| DAVIS ACCOUNTING GROUP PC | CEDAR CITY | ACCOUNTANCY C.P.A. FIRM | 5083056-2603 | EXPIRED |

License Lookup Verification                                          https://secure.utah.gov/llv/search/search.html

# Utah Division of Occupational and Professional Licensing

## Search Results

PLEASE NOTE: In some professions, licensees may advance from a lower level of licensure to a higher one with a broader scope of practice. In such cases, the search results listed below for the lower level of licensure will show a status of expired, null and void, superseded, or another similar status. Therefore it is important for you to search the results of all licenses shown before assuming a particular licensee does not hold a current license.

Click the Licensee Name to view details.

| Licensee Name | City | Profession | License # | Status |
|---|---|---|---|---|
| EDWIN REESE DAVIS, JR | CEDAR CITY | ACCOUNTANCY<br>CERTIFIED PUBLIC ACCOUNTANT | 129238-2601 | EXPIRED |

# EXHIBIT C

Davis Accounting Group PC | Better Business Bureau Review | Cedar...    http://www.bbb.org/utah/business-reviews/certified-public-accountan...



Contact Us | Find a BBB | Site Map | Text Size    Search

For Consumers

For Businesses

For Charities and Donors        In Utah

About Us

News Center

BBB   Home   Business Directory   Certified Public Accountants   Davis Accounting Group PC

**For Businesses**

Apply for BBB
Accreditation

Update your Business
Information

Business Resource
Library

BBB Reliability Report for

# Davis Accounting Group PC

BBB Rating F            Ratings Explanation

More

File or Submit a
Complaint Against
**Davis Accounting Group
PC**

File Complaint

BBB issues Reliability Reports on all businesses, whether or not they are
BBB accredited. If a business is a BBB Accredited Business, it is stated in
this report.

Is this report helpful? Yes | No

**Join Us!**
Apply to be
Considered
for Accreditation

Apply Now

**Find out more about Davis Accounting Group PC:**

› BBB Accreditation            › Government Actions
› BBB Rating                    › Advertising Review
› Business Contact and Profile  › Industry Tips
› Business Management           › BBB Copyright and Reporting
› Additional Locations and Phone  Policy
Numbers                        › Feedback
› Licensing
› Customer Complaint History

What is a
**BBB Accredited
Business?**

Learn More

What are
**BBB Ratings?**

Learn More

Back to top

- Select Language -

**BBB Accreditation**

This business is not a BBB Accredited Business.

Back to top

**BBB Rating for Davis Accounting Group PC**

Based on BBB files, Davis Accounting Group PC has a BBB Rating of F
on a scale from A+ to F.

Reasons for this rating include:

• Failure to obtain a required competency license.

Click here for an explanation of BBB Ratings

Back to top

Privacy Policy | Trademarks | Terms of Use

## Business Contact and Profile for Davis Accounting Group PC    Council of Better Business Bureaus

| | |
|---|---|
| Name: | Davis Accounting Group PC |
| Phone: | (435) 865-2808 |
| Fax: | (435) 865-2821 |
| Address: | 1957 W Royal Hunte Dr Ste 150 |
| | Cedar City, UT 84720-1966 |
| Website: | www.davisaccountinggroup.com |
| Original Business Start Date: | January 2001 |
| Principal: | Mr. Ted Davis, Owner |
| Customer Contact: | Mr. Ted Davis, Owner |
| Entity: | Corporation |
| Incorporated: | January 2001, UT |
| Type of Business: | Certified Public Accountants, Accountants, Bookkeepers, Tax Return Services |
| BBB Accreditation: | Davis Accounting Group PC is not a BBB Accredited business. |
| Additional DBA Names: | Davis Accounting Group |

Back to top

### Business Management

Additional company management personnel include:

Mr. Jason Davis - Dir of Business Dev
Mr Edwin Reese Davis - Owner

Back to top

### Additional Locations and Phone Numbers

**Additional Phone Numbers**
Tel: (877) 868-2937

**Additional Email Addresses**
info@davisaccountinggroup.com

Back to top

### Licensing for Davis Accounting Group PC

According to Department of Professional and Occupational Licensing (DOPL) this company's CPA license expired on September 30, 2008. For updated information, please visit www.dopl.utah.gov.

Back to top

### Customer Complaint History for Davis Accounting Group PC

BBB processed a total of 0 complaints about Davis Accounting Group PC in the last 36 months, our standard reporting period.

Davis Accounting Group PC | Better Business Bureau Review | Cedar...     http://www.bbb.org/utah/business-reviews/certified-public-accountan...

## Government Actions

BBB has no information regarding government actions at this time.

Back to top

## Advertising Review

BBB has no information regarding advertising review at this time.

Back to top

## Industry Tips

Avoid Abusive Home-Based Business Tax Schemes
Businesses Urged to Avoid Employment Tax Schemes
Dont Fall Victim to Tax Reduction Schemes!
Finding a Reputable Tax Preparer
Medical Billing Opportunities

Back to top

## BBB Copyright and Reporting Policy

As a matter of policy, BBB does not endorse any product, service or business.

BBB Reliability Reports are provided solely to assist you in exercising your own best judgment. Information in this BBB Reliability Report is believed reliable, but not guaranteed as to accuracy.

BBB Reliability Reports generally cover a three-year reporting period. BBB Reliability Reports are subject to change at any time.

If you choose to do business with Davis Accounting Group PC, please let them know that you contacted BBB for a BBB Reliability Report.

ID: 22005491
Report as of September 30, 2010 16:15
Copyright[©] 2010 Better Business Bureau

Back to top

## Feedback

Is this report helpful? Yes | No

# EXHIBIT D



1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-9100
Facsimile: (202) 862-8430
www.pcaobus.org

# Inspection of
# Davis Accounting Group P.C.

### Issued by the

# Public Company Accounting Oversight Board

### April 24, 2008

---

**THIS IS A PUBLIC VERSION OF A PCAOB INSPECTION REPORT**

**PORTIONS OF THE COMPLETE REPORT ARE OMITTED
FROM THIS DOCUMENT IN ORDER TO COMPLY WITH
SECTIONS 104(g)(2) AND 105(b)(5)(A)
OF THE SARBANES-OXLEY ACT OF 2002**

---

PCAOB RELEASE NO. 104-2008-050A
(Includes portions of Part II of the full report that
were not included in PCAOB Release No. 104-2008-050)

PCAOB Release No. 104-2008-050A



Public Company Accounting Oversight Board

---

### Notes Concerning this Report

1.  Portions of this report may describe deficiencies or potential deficiencies in the systems, policies, procedures, practices, or conduct of the firm that is the subject of this report. The express inclusion of certain deficiencies and potential deficiencies, however, should not be construed to support any negative inference that any other aspect of the firm's systems, policies, procedures, practices, or conduct is approved or condoned by the Board or judged by the Board to comply with laws, rules, and professional standards.

2.  Any references in this report to violations or potential violations of law, rules, or professional standards should be understood in the supervisory context in which this report was prepared. Any such references are not a result of an adversarial adjudicative process and do not constitute conclusive findings of fact or of violations for purposes of imposing legal liability. Similarly, any description herein of a firm's cooperation in addressing issues constructively should not be construed, and is not construed by the Board, as an admission, for purposes of potential legal liability, of any violation.

3.  Board inspections encompass, among other things, whether the firm has failed to identify departures from U.S. Generally Accepted Accounting Principles ("GAAP") or Securities and Exchange Commission ("SEC" or "Commission") disclosure requirements in its audits of financial statements. This report's descriptions of any such auditing failures necessarily involve descriptions of the related GAAP or disclosure departures. The Board, however, has no authority to prescribe the form or content of an issuer's financial statements. That authority, and the authority to make binding determinations concerning an issuer's compliance with GAAP or Commission disclosure requirements, rests with the Commission. Any description, in this report, of perceived departures from GAAP or Commission disclosure requirements should not be understood as an indication that the Commission has considered or made any determination regarding these issues unless otherwise expressly stated.


Public Company Accounting Oversight Board

PCAOB Release No. 104-2008-050A

## INSPECTION OF DAVIS ACCOUNTING GROUP P.C.

The Public Company Accounting Oversight Board ("PCAOB" or "the Board") has conducted an inspection of the registered public accounting firm Davis Accounting Group P.C. ("the Firm"). The Board is issuing this report of that inspection in accordance with the requirements of the Sarbanes-Oxley Act of 2002 ("the Act").

The Board is making portions of the report publicly available. Specifically, the Board is releasing to the public Part I of the report and portions of Part IV of the report. Part IV of the report consists of the Firm's comments, if any, on a draft of the report.[1]

The Board has elsewhere described in detail its approach to making inspection-related information publicly available consistent with legal restrictions.[2] A substantial portion of the Board's criticisms of a firm (specifically criticisms of the firm's quality control system), and the Board's dialogue with the firm about those criticisms, occurs out of public view, unless the firm fails to make progress to the Board's satisfaction in addressing those criticisms. In addition, the Board generally does not disclose otherwise nonpublic information, learned through inspections, about the firm or its clients. Accordingly, information in those categories generally does not appear in the publicly available portion of an inspection report.

---

[1]      The Board does not make public any of a firm's comments that address a nonpublic portion of the report unless a firm specifically requests otherwise. In addition, pursuant to section 104(f) of the Act, 15 U.S.C. § 7214(f), and PCAOB Rule 4007(b), if a firm requests, and the Board grants, confidential treatment for any of the firm's comments on a draft report, the Board does not include those comments in the final report at all. The Board routinely grants confidential treatment, if requested, for any portion of a firm's response that addresses any point in the draft that the Board omits from, or any inaccurate statement in the draft that the Board corrects in, the final report.

[2]      See Statement Concerning the Issuance of Inspection Reports, PCAOB Release No. 104-2004-001 (August 26, 2004).


Public Company Accounting Oversight Board

PCAOB Release No. 104-2008-050A
Inspection of Davis Accounting Group P.C.
April 24, 2008
Page 2

## PART I

## INSPECTION PROCEDURES AND CERTAIN OBSERVATIONS

Members of the Board's inspection staff ("the inspection team") conducted fieldwork for the inspection from June 18, 2007 to June 22, 2007. The fieldwork included procedures tailored to the nature of the Firm, certain aspects of which the inspection team understood at the outset of the inspection to be as follows:

| | |
|---|---|
| Number of offices | 1 (Cedar City, Utah) |
| Ownership structure | Corporation |
| Number of partners | 1 |
| Number of professional staff[3] | 3 |
| Number of issuer audit clients[4] | 13 |

Board inspections are designed to identify and address weaknesses and deficiencies related to how a firm conducts audits.[5] To achieve that goal, Board

---

[3]    "Professional staff" includes all personnel of the Firm, except partners or shareholders and administrative support personnel. The number of partners and professional staff is provided here as an indication of the size of the Firm, and does not necessarily represent the number of the Firm's professionals who participate in audits of issuers or are "associated persons" (as defined in the Act) of the Firm.

[4]    The number of issuer audit clients shown here is based on the Firm's self-reporting and the inspection team's review of certain information for inspection planning purposes. It does not reflect any Board determination concerning which, or how many, of the Firm's audit clients are "issuers" as defined in the Act. In some circumstances, a Board inspection may include a review of a firm's audit of financial statements of an issuer that ceased to be an audit client before the inspection, and any such former clients are not included in the number shown here.

[5]    This focus necessarily carries through to reports on inspections and, accordingly, Board inspection reports are not intended to serve as balanced report cards or overall rating tools.



Public Company Accounting Oversight Board

inspections include reviews of certain aspects of selected audits performed by the firm and reviews of other matters related to the firm's quality control system.

In the course of reviewing aspects of selected audits, an inspection may identify ways in which a particular audit is deficient, including failures by the firm to identify, or to address appropriately, respects in which an issuer's financial statements do not present fairly the financial position, results of operations, or cash flows of the issuer in conformity with GAAP.[6/] It is not the purpose of an inspection, however, to review all of a firm's audits or to identify every respect in which a reviewed audit is deficient. Accordingly, a Board inspection report should not be understood to provide any assurance that the firm's audits, or its issuer clients' financial statements, are free of any deficiencies not specifically described in an inspection report.

A.     Review of Audit Engagements

The inspection procedures included a review of aspects of the Firm's auditing of financial statements of two issuers. The scope of this review was determined according to the Board's criteria, and the Firm was not allowed an opportunity to limit or influence the scope.

The inspection team identified what it considered to be audit deficiencies.[7/] The deficiencies identified in both of the audits reviewed included deficiencies of such significance that it appeared to the inspection team that the Firm did not obtain sufficient

---

[6/]     When it comes to the Board's attention that an issuer's financial statements appear not to present fairly, in a material respect, the financial position, results of operations, or cash flows of the issuer in conformity with GAAP, the Board's practice is to report that information to the SEC, which has jurisdiction to determine proper accounting in issuers' financial statements.

[7/]     PCAOB standards require a firm to take appropriate actions to assess the importance of audit deficiencies identified after the date of the audit report to the firm's present ability to support its previously expressed opinions. See AU 390, *Consideration of Omitted Procedures After the Report Date,* and AU 561, *Subsequent Discovery of Facts Existing at the Date of the Auditor's Report* (both included among the PCAOB's interim auditing standards, pursuant to PCAOB Rule 3200T). Failure to comply with these PCAOB standards could be a basis for Board disciplinary sanctions.



competent evidential matter to support its opinion on the issuers' financial statements.[8/]
Those deficiencies were –

(1)   the pervasive failure to plan, perform, and document performance of the audit; and

(2)   inappropriately taking responsibility for the work of another auditor when the other auditor performed substantially all of the audit procedures that served as the basis for the Firm's opinion.

B.   Review of Quality Control System

In addition to evaluating the quality of the audit work performed on specific audits, the inspection included review of certain of the Firm's practices, policies, and procedures related to audit quality.   This review addressed practices, policies, and procedures concerning audit performance, training, compliance with independence standards, client acceptance and retention, and the establishment of policies and procedures.   As described above, any defects in, or criticisms of, the Firm's quality control system are discussed in the nonpublic portion of this report and will remain nonpublic unless the Firm fails to address them to the Board's satisfaction within 12 months of the date of this report.

END OF PART I

---

[8/]   In some cases, an inspection team's observation that a firm failed to perform a procedure may be based on the absence of documentation and the absence of persuasive other evidence, even if a firm claims to have performed the procedure. PCAOB Auditing Standard No. 3, *Audit Documentation* ("AS No. 3"), provides that, in various circumstances including PCAOB inspections, a firm that has not adequately documented that it performed a procedure, obtained evidence, or reached an appropriate conclusion must demonstrate with persuasive other evidence that it did so, and that oral assertions and explanations alone do not constitute persuasive other evidence. *See* AS No. 3, paragraph 9; Appendix A to AS No. 3, paragraph A28. For purposes of the inspection, an observation that the Firm did not perform a procedure, obtain evidence, or reach an appropriate conclusion may be based on the absence of such documentation and the absence of persuasive other evidence.



PORTIONS OF THE REST OF THIS REPORT ARE NONPUBLIC AND ARE OMITTED
FROM THIS PUBLIC DOCUMENT



Public Company Accounting Oversight Board

PCAOB Release No. 104-2008-050A
Inspection of Davis Accounting Group P.C.
April 24, 2008
Page 6

## PART II

\* \* \* \*

B.      Issues Related to Quality Controls

The inspection of the Firm included consideration of aspects of the Firm's system of quality control. Assessment of a firm's quality control system rests both on review of a firm's stated quality control policies and procedures and on inferences that can be drawn from respects in which a firm's system has failed to assure quality in the actual performance of engagements.[9/]  On the basis of the information reported by the inspection team, the Board has the following concerns about aspects of the Firm's system of quality control.

1.      Audit Performance

A firm's system of quality control should provide reasonable assurance that the work performed on an audit engagement will meet applicable professional standards and regulatory requirements. On the basis of the information reported by the inspection team, including the audit performance deficiencies described in Part II.A and any other deficiencies identified below, the Board has concerns that the Firm's system of quality control fails to provide such reasonable assurance in at least the following respects –

a.      Technical Competence, Due Care, and Professional Skepticism

The Firm's system of quality control appears not to do enough to ensure technical competence and the exercise of due care or professional skepticism.

---

[9/]      A firm's failure to comply with the requirements of PCAOB standards when performing an audit may be an indication of a potentially significant defect in a firm's quality control system even if that failure did not result in an insufficiently supported audit opinion.


Public Company Accounting Oversight Board

     b.    Auditor Communications

The Firm's system of quality control appears not to provide sufficient assurance that the required auditor communications between the Firm and the audit committee, or equivalent, occur and are appropriately documented, including the independence confirmations required by Independence Standards Board Standard No. 1, *Independence Discussions with Audit Committees.* [Issuers A and B]

     c.    Partner Workload

The Firm's system of quality control may not provide sufficient assurance that the audit partner's workload requirements realistically allow for sufficient time to perform audit procedures, supervise staff, and review work papers with due care. The Firm's only audit engagement partner is the individual primarily responsible for servicing all of the Firm's issuer audit clients (approximately 80 percent of total engagement hours for issuer audit clients were incurred by the audit engagement partner). In addition, the Firm acquired eight of its 13 issuer audit clients from October 2006 to April 2007, including three operating companies which operate primarily in foreign countries, and approximately half of the Firm's issuer audit clients report their financial results on a calendar year-end basis.

     d.    Concurring Partner Review

Because the Firm was a member of the SEC Practice Section of the AICPA, the Firm is subject to the concurring partner review requirement in the Board's interim standards. The Firm is thus required to have procedures for concurring partner review and maintain documentary evidence of such reviews. Having procedures for concurring partner review by a competent reviewer is an important element of quality control. Such reviews should involve the performance of appropriate procedures using due care and professional skepticism, with the Firm appropriately addressing the reviewer's findings and documenting the process. A concurring partner review was not performed on any of the Firm's 2006 issuer audits before the issuance of the audit report.

     2.    Independence

The Firm's system of quality control appears not to provide sufficient assurance that the Firm will comply with independence requirements. As described in Part II.C below, the inspection team reported information indicating that the Firm may not have



Public Company Accounting Oversight Board

PCAOB Release No. 104-2008-050A
Inspection of Davis Accounting Group P.C.
April 24, 2008
Page 8

been independent of certain of its issuer audit clients within the meaning of the Commission's independence requirements.  [Issuers A and B]

3.    Practice Monitoring

The Firm's system of quality control, as it relates to monitoring, appears not to provide reasonable assurance that the Firm is effectively monitoring its accounting and auditing practice.  In the three years immediately preceding the inspection, the Firm did not follow its written policy with respect to "Monitoring," which states that the Firm should conduct an internal inspection program to monitor the adequacy and effectiveness of its quality control policies and procedures.

* * * *



**Public Company Accounting Oversight Board**

**PART IV**

**RESPONSE OF THE FIRM TO DRAFT INSPECTION REPORT**

Pursuant to section 104(f) of the Act, 15 U.S.C. § 7214(f), and PCAOB Rule 4007(a), the Board provided the Firm an opportunity to review and comment on a draft of this report.  The Firm did not provide a written response.

# EXHIBIT E

2/9/2011                                    Accountant arrested on Montana-issue...

# Accountant arrested on Montana-issued warrant

The Spectrum - St. George, Utah
Author:           Nur Kausar
Date:             Dec 21, 2010
Start Page:       4
Section:          A
Text Word Count: 471

---

## Document Text

CEDAR CITY - Law enforcement officers arrested a local accountant, who is also the former chief financial officer of Copper King Mining Corporation, on a warrant charge of fugitive from justice out of Montana.

Edwin "Ted" Reese Davis, Jr., 61, 304 S. Spring Canyon Road East, Cedar City, had been wanted by the Park County Sheriff's Office in Livingston, Mont., on suspicion of issuing bad checks, said Iron County Sheriff's Office Det. Jody Edwards, whose department made the arrest at Davis' office, 1957 W. Royal Hunte Drive.

"When I spoke to the detective from Park County on Thursday, he told me Davis had taken a number of businesses in the city through issuing several bad checks," Edwards said Monday.

The Park County Attorney could not comment for this report Monday.

Edwards said Davis is facing charges of unlawful professional conduct in Utah as well. Those charges stem from financial issues with Copper King, a Nevada corporation that mines in Beaver County around the Milford Mineral Belt, for which Davis' accounting firm was contracted and he was their CFO.

According to the Western Utah Copper Company website, wuccompany.com, Copper King's subsidiary, the corporation filed for bankruptcy in March.

The Utah Department of Commerce's Division of Occupational and Professional Licensing revoked Davis' license, stating in its December newsletter that Davis and his firm "engaged in unlawful conduct by continuing to practice as a certified public accountant (and as a CPA firm), otherwise hold(ing) himself out to be a CPA after his license had expired on September 30, 2008."

Davis was ordered to "cease and desist from engaging in any acts or practice that constitute the practice of public accountancy" as of Nov. 4, according to an order from the division.

Department of Commerce Public Information Officer Jennifer Bolton said though Davis has to be licensed with the state to work as a certified public accountant, he could have other businesses under his name without being a CPA.

Under the department's Division of Corporations and Commercial Code, Davis' status as Davis Accounting Group P.C. is still active and renewal is not due until Jan. 17, 2011.

Bolton said the only other thing Davis would need is a business license with the city, and Jennifer Hunter in the Economic Development office for Cedar City said Davis is still listed with the same address on Royal Hunte Drive and phone number.

However, upon calling the number listed under Davis Accounting, the name on the answering machine is for an international accounting and consulting group.

When the Cedar City Daily News called the office again Monday afternoon, a man responded and refused to give the name of the office after the newspaper's representative identified herself as a reporter.

Davis was in the Iron County Jail as of Monday, with no bail set because of the warrant arrest.

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

---

## Abstract (Document Summary)

According to the Western Utah Copper Company website, wuccompany.com, Copper King's subsidiary, the corporation filed for bankruptcy in March.

# EXHIBIT F

## David B. Golubchik

| | |
|---|---|
| **From:** | chuck dawson [dawsonchuck@hotmail.com] |
| **Sent:** | Wednesday, February 09, 2011 10:18 AM |
| **To:** | dave McMull cprk |
| **Subject:** | RE: WUCC Records and Proposal |

Subject: FW: WUCC Records and Proposal
Date: Fri, 4 Feb 2011 09:06:53 -0700
From: Ted@etaniagroup.com
To: leeabbott@qwest.net
CC: dawsonchuck@hotmail.com

Lee (also copied to Chuck Dawson):

Thank you for the message about the email address. I reviewed the address that I used for the second message and it was leeabbott@qwest.net. So, it seemed to correct. Please let me know if you get this email so that I can rest assured that I have the correct address in the system.

Given the timeline provided in my first email to you, I trust that we will have an opportunity to work through any concerns that you may have, and arrive at a starting point today on this WUCC/CPRK project. Please may I respectfully request that you let me know as early in the day as possible of your decision, so, if you do wish to proceed with the engagement, we can work through the logistics of the first transfer of funds.

All the best.

Ted Davis

# Ted Davis, President and CEO
# Etania Group
**1957 W. Royal Hunte Drive #150**
**Cedar City, Utah 84720 USA**
**Phone: 435-865-2808**
**Fax: 435-865-2821**
**Ted@etaniagroup.com**

**As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax penalties that may be imposed under the Internal Revenue Code.**

**From:** Ted Davis
**Sent:** Wednesday, February 02, 2011 2:57 PM
**To:** leeabbott@qwest.net
**Subject:** FW: WUCC Records and Proposal

Lee,

Thanks for the note. I missed the "w" in qwest.net in your email address. Sorry about that. Correct now.

Please see the message sent to Chuck below. I hope to hear from you soon.

Regards,

Ted Davis

## Ted Davis, President and CEO
## Etania Group
**1957 W. Royal Hunte Drive #150**
**Cedar City, Utah 84720 USA**
**Phone: 435-865-2808**
**Fax: 435-865-2821**
**Ted@etaniagroup.com**

**As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax penalties that may be imposed under the Internal Revenue Code.**

**From:** Ted Davis
**Sent:** Wednesday, February 02, 2011 9:15 AM
**To:** dawsonchuck@hotmail.com; leeabbott@quest.net
**Subject:** WUCC Records and Proposal

Chuck and Lee:

It was a pleasure to discuss WUCC/CPRK matters with you last night. I appreciated your candor and objectivity on the various matters and records that I presented. Obviously, there is much, much more information that can be presented on various topics when time permits. It is worth listing in this email message the reasons why I believe that these records and attendant work should be used (and completed) for the benefit the Shareholders' Equity Committee and other committees in Bankruptcy at this time:

1. CPRK/WUCC will not be able to emerge from Bankruptcy unless and until all of the records, outstanding filings, financial statements, POR, etc. have been completed and presented to the Court. So, whether anyone realizes it or not, we are in a race against time for the completion of the work.

2. CPRK/WUCC has an "immediate need" for information to be presented for IRS and employee purposes in order to satisfy certain reporting and compliance rules, and I don't believe that you wish the former and current employees to be in a position whereby they cannot file their 2010 individual tax returns on a timely basis. As you said, they have suffered enough.

3. There are currently three Federal level Subpoenas outstanding pertaining to criminal investigations (SEC, IRS, and DOL) against the Company and certain individuals. Each of these Subpoenas cuts across the information that has been prepared in a different way -- payroll and tax compliance/reporting, labor/wage calculations, and equity formation transactions. Without the current information and the opportunity of completing the work on the records, CPRK/WUCC, in my estimation, will not be able to clear these Subpoenas on a timely basis, and the matter will escalate to the Bankruptcy Court and become a major stumbling block to move forward.

4. The current Board of Directors and DIP President have created an adversarial position with me, and it is my belief that they do not wish this information to "reach the light of day." To suppress this information, my firm and I have been sued in Bankruptcy Court with the desire to obtain the records before anyone realizes what is there. Thereafter, it

could be controlled for their personal objectives, and not the proper objectivity of CPRK/WUCC.

As such, I propose the following working relationship to you/your committee (however you best see the engagement) for the records to be used ASAP for the benefit of CPRK/WUCC:

1. <u>Engage my firm to complete the work</u>. As I stated, we have performed an estimate of the time required to complete the debt/equity elements of the cash receipts, identification of the suspense items, cost accounting allocations, and final journal entries, etc. to take each year to the level of "audit ready" financial statements. The number of hours is approximately 1,000. At a discounted rate of $50 per hour, we would propose doing the work on a "not to exceed basis" going forward of $50,000. That would include the immediate work required for the 941's, W-2's, and other reports needed "now" for 2010. This measure, if approved, should be done this week to get as close to compliance with the W-2 requirements as possible. As we discussed, I believe my firm is best suited to complete the work. Starting over with somebody else will take at least 14 months of time and about 7,000 hours. I presume your timeline will not accommodate that kind of delay to emerge from Bankruptcy.

2. <u>Pay a portion of the fees owed to me now – and rest later</u>. As I mentioned to you last night, I realize that funding is an issue at this time for the Committee. To accommodate that fact, I would propose that I be paid $150,000 of past fees now (this week – before Friday), $150,000 at the time of the completion of the records (after 1,000 hours of work), and the remainder one month thereafter for a total of $450,000. As I mentioned, my total fees outstanding now are $233,000 (pre-petition), $167,000 (post-petition), and the rest would be for the $50,000 for the current work to complete the project. I believe this to be a fair fee position considering how much my firm and I have been damaged in this matter. The first $150,000 payment element of this proposal is considered by me to be non-negotiable. I believe you can see why.

3. <u>The current lawsuit against my firm and me goes away</u>. This matter is dropped for good ASAP. The matters contained therein are considered resolved in all respects. A full retraction is provided to the local newspapers in Beaver and Cedar City.

4. <u>At the proper time, my firm and I are considered for the CFO Position of the Company moving forward</u>. I would like to continue with the company once the Bankruptcy is over. My experience in the industry, and certainly with CPRK/WUCC before and during the Bankruptcy, would be of great value moving forward. I believe that I would then accomplish all of the five elements of the initial scope of work assigned under the engagement letter.

We are ready to mobilize over the next few days upon acceptance. I would ask that you consider the above carefully, and take it to your Committee with all due haste for the necessary clearances and funding. I look forward to hearing from on this matter. Please call me if you have any questions on the above.

Best regards,

Ted Davis

**Ted Davis, President and CEO**
**Etania Group**
**1957 W. Royal Hunte Drive #150**
**Cedar City, Utah 84720 USA**
**Phone: 435-865-2808**
**Fax: 435-865-2821**
**Ted@etaniagroup.com**

As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax penalties that may be imposed under the Internal Revenue Code.

## David B. Golubchik

**From:** chuck dawson [dawsonchuck@hotmail.com]
**Sent:** Wednesday, February 09, 2011 10:23 AM
**To:** dave McMull cprk
**Subject:** FW: Status of Funding and Deadlines

Subject: Status of Funding and Deadlines
Date: Mon, 7 Feb 2011 16:23:57 -0700
From: Ted@etaniagroup.com
To: dawsonchuck@hotmail.com; leeabbott@qwest.net

Chuck and Lee,

From my email of February 5, 2011, I am providing the following:

> Please advise.  I will need to talk about funding with you and Lee on Monday morning, or today, if you can, to resolve this matter to move forward.  Please discuss with Lee – I will need $15,000 (coming from Lee as I understand it, on Monday – no later) with the balance of $60,000 for a total of $75,000 this next week, then another $75,000 the following week.  That would get the first installment done, and I can move forward if the first $75,000 is paid.  I am trying to accommodate the situation, but obviously, a sure source of funding is needed on your side if Lee cannot do the amounts needed.  That is my offer at this time, which is a modification to the initial proposal provided last week.

I talked with Lee today, but he did not receive his wire of funds on his side.  Therefore, the $15,000 requirement was not met today.

I believe that it is imperative that the wire transfer matter is not left to slide.  This is where we are, the real deal and time for action.

I can't do anything else to help on my side, guys.  I have done all I can to make it a workable payment plan for the engagement.

Can I count on this for tomorrow and the remainder over this week and next?  Please let me know this evening, and get back to me by email.  Much appreciated.

Regards,

Ted Davis

## Ted Davis, President and CEO
## Etania Group
**1957 W. Royal Hunte Drive #150**
**Cedar City, Utah 84720 USA**
**Phone: 435-865-2808**
**Fax: 435-865-2821**
**Ted@etaniagroup.com**

**As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax penalties that may be imposed under the Internal Revenue Code.**