MARTIN J. BRILL (Calif. Bar No. 53220) mjb@lnbyb.com
DAVID B. GOLUBCHIK (Calif. Bar No. 185520) dbg@lnbyb.com
KRIKOR J. MESHEFEJIAN (Calif. Bar No. 255030) kjm@lnbyb.com
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
*Reorganization Counsel for Chapter 11 Debtors and Debtors-in-Possession*

STEVEN R. SKIRVIN (Utah Bar No. 7626)
**DION-KINDEM & CROCKETT**
10808 S. River Front Parkway, Suite 308
South Jordan, UT 84095
Telephone: (801) 984-8045
Facsimile: (801) 984-4315
Email: srs@dkclaw.com
*Local Counsel for Chapter 11 Debtors and Debtors-in-Possession*

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>WESTERN UTAH COPPER COMPANY, et al.,<br><br>Debtors and Debtors in Possession. | Bankruptcy No. 10-29159 WTT<br><br>Chapter 11<br><br>(Jointly Administered with Case No. 10-30002 WTT)<br><br>Honorable William T. Thurman<br><br>**Filed Electronically** |

**DECLARATION OF DAVID J. RICHARDS IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER: (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES AND DETERMINING CURE AMOUNTS; (C) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d); AND (D) GRANTING RELATED RELIEF**

1

4671

I, David J. Richards, hereby declare as follows:

1. I have personal knowledge of the facts set forth herein and could and would competently testify as to these facts.

2. I make this Declaration in support of the Motion For Entry Of An Order: (A) Authorizing The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances And Interests; (B) Authorizing And Approving Assumption And Assignment Of Executory Contracts And Leases And Determining Cure Amounts; (C) Waiving The 14-Day Stay Periods Set Forth In Bankruptcy Rules 6004(H) And 6006(D); And (D) Granting Related Relief (the "Motion")

3. I am a principal and authorized agent for Skye Mineral Partners, LLC ("SMP"), the primary secured creditor herein. I am also a principal and authorized agent for CS Mining, LLC ("CS"), the proposed purchaser of assets of Western Utah Copper Company ("WUCC") and Copper King Mining Corporation ("Copper King" and with WUCC, the "Debtors").

4. We have spent months negotiating the terms of a transaction with respect to the Debtors' exit strategy. While it was initially contemplated that the transaction would be effectuated through a plan of reorganization, CS' business model and investor base required the acquisition of assets on a more expedited basis and, therefore, CS advised the Debtors that such transaction must be effectuated through a motion to approve sale.

5. After extensive negotiations between the Debtors, CS and the Official Committee of Unsecured Creditors, the parties have agreed on the terms of an asset purchase agreement ("APA") for the sale of WUCC's assets to CS, which is attached as **Exhibit "1"** to the accompanying Declaration of A. John A. Bryan, Jr.

6. In addition, the parties have agreed on the terms of a sale of unpatented mining claims (the "Claims") from Copper King to CS pursuant to a Term Sheet attached as

4671

**Exhibit "2"** to the accompanying Declaration of A. John A. Bryan, Jr. Altus Metals, LLC and/or Empire Advisors, LLC ("Altus") previously provided financing to the Debtors which allowed Copper King to acquire the Claims. Based on my understanding of the transaction, the acquisition cost of the Claims was less than $90,000 and, unless extended through additional payments, such Claims expire in August 2011. To the best of my knowledge, including due diligence conducted as to the Debtors' assets, Copper King has not taken any action to develop, or move forward with, such Claims and, as a result, I do not believe that they have value in excess of the acquisition costs.

7.  In order to assist Copper King's bankruptcy estate, CS has agreed to acquire such Claims in exchange for (a) assumption of SMP's, Altus', Strategic Capital Partners, LLC's and Winterfox, L.L.C.'s and their related entities' secured debts related thereto; (b) assumption of certain substantial guarantees and/or unsecured debts of Copper King; (c) payment to Copper King of $100,000; and (d) issuance to Copper King of 1% of the common stock of CS. In addition, to avoid unnecessary litigation costs, CS has also agreed to offer to Copper King warrants for up to 2% equity in CS provided that the Equity Committee in Copper's King's bankruptcy case does not object to the Motion (including the Copper King and WUCC transactions). I believe that the offer in Copper King is significantly greater than the value of the assets being conveyed to CS pursuant to the Term Sheet.

8.  As set forth in Section 11.9 of the APA, CS intends to offer employment to only one (1) insider of the Debtors - David McMullin. CS does not currently intend to hire any other insiders of the Debtors.

9.  As set forth in Section 14.5 of the APA, CS has incurred no liability to any broker or agent with respect to the payment of any commission or other compensation

regarding the consummation of the transactions contemplated by the APA for which WUCC may be liable.

10. As set forth in Section 5.22 of the APA, while CS or SMP intends to pay certain fees related to structuring the transactions and raising funds (e.g., investment banking fees and finder's fees), no payments of any kind shall be made by CS or its affiliates to, or for the benefit of, any officers or directors of the Debtors, except David McMullin in connection with his contemplated employment as referenced in paragraph 8 above. As disclosed therein, CS intends to compensate Gary Post in connection with the foregoing services. To the best of my knowledge, and as represented to me by the Debtors, Gary Post is not an officer, director or insider of the Debtors.

11. I was the one of the representatives of CS primarily responsible for negotiating the transactions with the Debtors. The transactions were negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's-length bargaining positions. I am certain that CS has acted in good faith at all steps of the process.

12. At no time did CS or its representatives engage in any action, or take any position, that would unfairly prejudice either of the Debtors or chill the bidding process. In fact, CS has encouraged bidding by lowering the overbid amount in the APA as set forth in Section 8.3 thereof.

13. Based on the foregoing, I believe that CS should be deemed to be a "good faith" purchaser and entitled to the protections of such purchaser as provided for under applicable bankruptcy laws.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 15th day of July 2011, in Columbus, Ohio.

_____
DAVID J. RICHARDS