**The below described is SIGNED.**

**Dated: August 22, 2011**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**

_____

[Prepared and submitted by]:
MARTIN J. BRILL (Calif. Bar No. 53220) mjb@lnbyb.com
DAVID B. GOLUBCHIK (Calif. Bar No. 185520) dbg@lnbyb.com
KRIKOR J. MESHEFEJIAN (Calif. Bar No. 255030) kjm@lnbyb.com
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
*Reorganization Counsel for Chapter 11 Debtors and Debtors-in-Possession*

STEVEN R. SKIRVIN (Utah Bar No. 7626)
**DION-KINDEM & CROCKETT**
10808 S. River Front Parkway, Suite 308
South Jordan, UT 84095
Telephone: (801) 984-8045
Facsimile: (801) 984-4315
Email: srs@dkclaw.com
Local Counsel for Chapter 11 Debtors and Debtors-in-Possession

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>**WESTERN UTAH COPPER COMPANY** and **COPPER KING MINING CORPORATION**,<br><br>Debtors-in-Possession. | **Case No. 10-29159 WTT**<br>(Jointly Administered with Case No. 10-3002 WTT)<br>Chapter 11<br><br>Honorable William T. Thurman |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES AND DETERMINING CURE AMOUNTS; (C) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(H) AND 6006(D); AND (D) GRANTING RELATED RELIEF**

13519203.10

Upon the Debtors' *Motion For Entry Of An Order (A) Authorizing The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of Liens, Claims, Encumbrances And Interests; (B) Authorizing And Approving Assumption And Assignment Of Executory Contracts And Leases And Determining Cure Amounts; (C) Waiving The 14-Day Stay Periods Set Forth In Bankruptcy Rules 6004(H) And 6006(D); And (D) Granting Related Relief* (Docket No. 732) (the "**Sale Motion**")[1] for the entry of an order pursuant to sections 105(a), 363(b), 363(f), 363(m), and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002(a)(2), 2002(c)(1), 2002(k), 2002(m), 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (a) approving the fully executed asset purchase agreement (as filed with the Court as Exhibit "1" to the Declaration of A. John A. Bryan, Jr. in support of the Sale Motion, (Docket No. 736) (the "**Bryan Dec.**"), as the same may be amended from time to time in accordance with the terms thereof) (the "**Asset Purchase Agreement**") by and between CS Mining, LLC ("**CS**" or the "**Purchaser**") and Western Utah Copper Company ("**WUCC**") the Debtors), (b) approving that certain Amended Asset Purchase Term Sheet, dated August 5, 2011, (the "**CKMC Term Sheet**" and together with the Asset Purchase Agreement, the "**Purchase Agreements**") by and between Copper King Mining Corporation ("**CKMC**" and, together with WUCC the "**Debtors**" or "**Sellers**"), as seller, and CS or Skye Mineral partners, LLC ("**Skye**"), or the designee of Skye or CS, as buyer, filed of record as Exhibit "1" to the Second Supplemental Declaration of A. John A. Bryan, Jr., (Docket No. 785) (the "**Second Supp. Bryan Dec.**"), (c) approving the assumption and assignment of executory contracts from the Debtors to CS as identified on Exhibit "3" of the Brian Dec. (collectively, the "**Executory Agreements**"); (d) authorizing the Sale[2] of the Purchased Assets of the Debtors, as identified in the Purchase Agreements, free and clear of all mortgages, deeds of trust, security interests, conditional sale or

---

[1] Except where otherwise indicated, capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Sale Motion. For ease of reference, all docket references herein are to the docket numbers in the above jointly-administered chapter 11 Case (Case No. 10-29159 WTT )

[2] As used herein, the term "Sale" means the transactions regarding the Purchased Assets as set forth in the Purchase Agreements.

13519203.10　　　　　　　　　　　　　　　　2

other title retention agreements, pledges, liens, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens, claims (including, but not limited to, any "claim" as defined in Section 101(5) of the Bankruptcy Code), reclamation claims, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, orders and decrees of any Court or foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, alter-ego, environmental, successor liability, judgments, demands, encumbrances, constructive or resulting trusts, or other encumbrances or charges of any kind or nature, if any, including but not limited to any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership and other interests asserted against either of the Debtors or against the Purchased Assets (all such liens, claims, encumbrances and other interests shall be referred to collectively as the "**Liens**"), other than any permitted encumbrances and assumed obligations (as defined in the Purchase Agreements); and (e) granting certain related relief.

The Court has reviewed the Sale Motion, heard the statements of counsel and reviewed the evidence submitted in support of the relief requested therein at the hearing held before the Court on August 22, 2011, at 1:00 p.m. (the "**Sale Hearing**"). It appears that the relief requested is in the best interest of the Debtors' estates, their creditors and other parties in interest. It appears that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. It appears that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). It appears that venue of these chapter 11 cases and of the Sale Motion is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and 1409. It appears that notice of the Sale Motion and the opportunity for a hearing on the Sale Motion was appropriate under the particular circumstances and that no other or further notice need be given. Accordingly, after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES THAT**:[3]

A. The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this division pursuant to 28 U.S.C. §§ 1408 and 1409.

B. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004 and 6006, and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein and immediate performance by the Debtors of their obligations hereunder.

C. The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 2002(c)(1), 2002(k), 2002(m), 6004, 6006, 9007 and 9014.

### Notice of the Sale and Auction

D. Actual written notice of the Sale, the Sale Hearing, the Sale Motion and the opportunity for parties in interest to submit overbids, together with a reasonable opportunity to be heard with respect to the Sale Motion and the relief requested therein, have been afforded to all interested persons and entities.

E. As evidenced by the declarations and certificates of service previously filed with this Court, proper, adequate and sufficient notice of the foregoing has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this contested matter pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

notice of the Sale, the Sale Hearing, the Sale Motion and over-bid rights to all such parties in interest.

F.  The foregoing notice described in paragraphs D and E was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale, the Sale Hearing, the Sale Motion or of the over-bid rights is required.

### The Results of Debtors' Sale Efforts

G.  As explained in detail in the Bryan Dec., and as further supported by the evidence admitted at the Sale Hearing, the Debtors have made a good faith, thorough and comprehensive effort to solicit higher and better offers for the Purchased Assets, and to market the Purchased Assets to prospective parties who might have an interest in purchasing the same. No higher and better offers of any kind were received for the Purchased Assets prior to the Sale Hearing, and no over-bids for such assets were received prior to the Sale Hearing. As shown by the Supplemental Declaration of A. John A. Bryan, Jr., (Docket No. 780) (the "**Supp. Bryan Dec**.") the Debtors have given extensive notice of the proposed Sale to prospective bidders, and have done extensive advertising, in an effort to attract alternative proposals. None were received. Moreover, even though the Debtors' exclusive periods for filing and confirming plans of reorganization in these cases expired several months ago, no party in interest has come forward with a viable reorganization plan for either Debtor. Accordingly, the offer of the Purchaser was the highest and best bid received for the Purchased Assets after more than one year of marketing efforts by the Debtors and its professionals.

H.  Under the terms of the Purchase Agreements, the Purchaser is to acquire all of the Debtors' right, title and interest in the Purchased Assets, including, without limitation, all proceeds, products, insurance claims, causes of action, improvements, enhancements, subsequent mining rights and other real and personal property interests related thereto.

13519203.10                                    5

**Good Faith of Purchaser**

I.  Neither the Purchaser, nor any of its affiliates and related companies, is an "affiliate" or an "insider" of either of the Debtors, as those terms are defined in sections 101(2) and 101(31) of the Bankruptcy Code, respectively.

J.  The Purchaser is purchasing the Purchased Assets in good faith, is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections of that provision, and otherwise has proceeded in good faith in all respects in connection with these chapter 11 cases in that:  (a) the Purchaser agreed to subject its bid to over-bids as set forth in the Sale Motion; (b) the Purchaser complied with the provisions in the Purchase Agreements; (c) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (d) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) no common identity of officers, directors or controlling equity holders exists between the Purchaser and either of the Debtors or any of the Debtors' affiliates, except Mr. David McMullin as disclosed in the Sale Motion; and (f) the negotiation and execution of the Purchase Agreements and any other agreements or instruments related thereto was at arm's length.  The Debtors and the Purchaser have publicly announced their intention to close as soon as practicable upon the entry of this Order.

**Highest and Best Offer**

K.  More than a year prior to selecting the Purchaser to acquire the Purchased Assets, the Debtors engaged various professionals, including financial advisors and attorneys, to seek the highest and best offer in connection with a sale of the Purchased Assets.  The Purchaser's offer was the best offer received in all that time.  Combined with that process, the Sale Motion and notice of the Sale Hearing afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets, including the opportunity for an auction.  These procedures were duly noticed and conducted in a

noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

L. The Purchase Agreements constitute the highest and best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreements constitute the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M. The Purchase Agreements represent a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Purchaser.

N. Approval of the Sale Motion, the Asset Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interest of the Debtors, their creditors, their estates and other parties in interest.

O. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale.

**No Fraudulent Transfer**

P. The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the bankruptcy Code and under the laws of the United States, any state territory, possession or the District of Columbia.

**Validity of Transfer**

Q. Each Debtor has full corporate power and authority to execute and deliver the Purchase Agreements, the Executory Agreements and all other documents contemplated thereby and to consummate the transactions contemplated by the Purchase Agreements. At or before the Closing (hereinafter, as defined in the Purchase Agreements) of the Sale, the Purchase Agreements, the Executory Agreements and all of the transactions contemplated thereby will

13519203.10                    7

have been duly and validly authorized by all necessary company or corporate action of each of the Debtors.  No consents or approvals other than the authorization and approval of the Court and those expressly provided for in the Purchase Agreements are required for each of the Debtors to consummate the Sale.

R.     The transfer of each of the Purchased Assets to the Purchaser will be, as of the Closing Date, a legal, valid and effective transfer of such Purchased Assets, and vests, or will vest, the Purchaser with all right, title and interest of the Debtors to the Purchased Assets, free and clear of all Liens accruing, arising or relating to any time prior to the Closing Date, except as further provided in this order, and except for any permitted encumbrances and assumed obligations as identified under the Purchase Agreements.

## Section 363(f) Is Satisfied

S.     The Debtors may sell the Purchased Assets to the Purchaser free and clear of all Liens against the Debtors, their estates or any of the Purchased Assets (except for any permitted encumbrances and assumed obligations under the Purchase Agreements) because, in each case, one or more of the standards set forth in section 363(f)(1)—(5) of the Bankruptcy Code has been satisfied.  With respect to any and all entities asserting Liens, including, without limitation, any options, pledges, security interests, claims, equities, reservations, third party rights, voting trusts or similar arrangements, charges or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits, registrations and authorizations or approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated on or against the Purchased Assets either (i) such entity has consented to the sale, transfer, license and assignment, as applicable, free and clear of its Liens, with such Liens to attach to the proceeds of such sale, transfer, license and assignment, as applicable, (ii) applicable non-bankruptcy law permits the sale of the assets free and clear of such Liens; (iii)

13519203.10                                                      8

such Liens are in *bona fide* dispute; or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Liens, so that the conditions of section 363(f) of the Bankruptcy Code have been met.

T. Those holders of Liens against the Debtors, their estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Liens who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor or interest holder alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any powers, claims and defenses the Debtors and their estates may possess with respect thereto.

**Assumption and Assignment of Executory Agreements**

U. Based on the evidence submitted in support of the Sale Motion with respect to "cure" payments in connection with the Executory Agreements, there are no "cure" payments to counter-parties to any of the Executory Agreements that are required in connection with the assumption and assignment of such Executory Agreement, and there are no pending "defaults" under such Executory Agreements, with the exception of a cure payment in the amount of $111,500 that is due to the holder of the lease identified in section 1.3 of Exhibit 3 of the Bryan Dec. (the "**McCulley / Wood Cure Payment**").

V. The evidence introduced at the Sale Hearing regarding (a) the funds previously advanced by the Purchaser to acquire claims, (b) the funds previously lent by the Purchaser, and their affiliates, to the Debtors for operating expenses, (c) the due diligence expenses incurred by the Purchaser in connection with the foregoing and in connection with the proposed Sale, (d) the funds available to Purchaser to consummate the Sale on the Closing, and (e) the funds available to and anticipated by the Purchaser to continue the development of the Purchased Assets, are all,

13519203.10 9

taken together, "adequate assurance of future performance" of the Executory Agreements by the Debtors and the Purchaser within the meaning of 11 U.S.C. § 365(b)(1)(C) and 365(f)(2)(B).

W. Payment of the McCulley / Wood Cure Payment to the lessor on or before August 26, 2011, will constitute a "prompt cure" within the meaning of 11 U.S.C. § 365(b)(1)(A).

X. The Debtors have satisfied the requirements of 11 U.S.C. § 365 for assumption of the Executory Agreements and for the assignment thereof to CS.

**Compelling Circumstances for an Immediate Sale**

Y. To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale occur within the time constraints set forth in the Purchase Agreements. As provided more fully in the Purchase Agreements, unless this Order is entered forthwith and unless the Closing of the Sale is consummated by August 25, 2011,[4] the Purchaser may terminate its obligation to buy the Purchased Assets. The Purchaser has required that Closing Date because it already has expended considerable funds to purchase claims, and has made significant loans and other advances to the Debtors for operating expenses. The acquired claims and the post petition loans are secured with all, or substantially all, of the Purchased Assets. Some of the post-petition loans had a one year maturity and are now in default. The Debtors do not have available funds to satisfy any of the post-petition loans, do not have a source of capital to replace or refinance the post-petition loans, and do not have sufficient funds to continue operating, continue protecting the Purchased Assets and paying administrative claims, which are accruing. Additional annual payments of at least $80,000 are due to the Bureau of Land Management on or before August 31, 2011, in order to preserve mining claims, and the Debtors do not have these funds. Absent immediate acquisition of the Purchased Assets, the Debtors are at significant risk that the security interests against the Purchased Assets will be foreclosed, that the value of the Purchased Assets will diminish due to

---

[4] See Section 3.1 of the Asset Purchase Agreement. Subject to the conditions set for in Sections 4 and 14 of the Asset Purchase Agreement, the Closing Date may be extended to an Outside Closing Date of September 15, 2011.

13519203.10  10

lack of adequate protection, and that the value of the Sale to the Debtors' estates will be lost. Furthermore, settlements have been negotiated with various interested parties, and those settlements are time sensitive and require performance within very restrictive time periods. In addition, global market conditions at the present time are extremely volatile and, during the last year, the price of copper has fluctuated widely. Accordingly, time is of the essence in consummating the Sale. Therefore, adequate cause exists to make this Order immediately effective upon its entry, notwithstanding Bankruptcy Rules 6004(g) and 6006(d).

Z. The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY

**ORDERED, ADJUDGED AND DECREED THAT**:

**General Provisions**

1. The relief requested in the Sale Motion is hereby granted and approved, and the Sale contemplated thereby is approved, to the extent set forth in this Order.

2. All objections to the Sale Motion, including, without limitation, those objections contained in Docket Nos. 759, 761 and 775, have either been resolved and withdrawn, in accordance with the terms and conditions of this Order, are hereby overruled on the merits, or the interests asserted in such objections have been satisfied or adequately provided for in this Order or otherwise.

3. The claims and interests of the Internal Revenue Service ("**IRS**"), if any, as against the Debtors, the Purchased Assets and the Purchaser, as well as against their respective successors, assigns and affiliates, shall be satisfied and paid by the Purchaser in accordance with the terms of that certain "Settlement Term Sheet," dated June 29, 2011, between WUCC, Skye, CS and the IRS, including any amendments, modifications or additions thereto, as the same may be further documented and memorialized.

4. The claims of Nevada Star Resource Corporation and Pure Nickel, Inc. (collectively, "**Nevada Star**"), if any, as against the Debtors, the Purchased Assets and the Purchaser, as well as against their respective successors, assigns and affiliates, shall be satisfied and paid by the Purchaser in accordance with the terms of that certain "Confidential Settlement Term Sheet," dated June 30, 2011, between WUCC, Skye, CS and Nevada Star, including any amendments, modifications or additions thereto as the same may be further documented and memorialized.

5. The claims of Republic Bank, Inc. ("**Republic**"), if any, as against the Debtors, the Purchased Assets and the Purchaser, as well as against their respective successors, assigns and affiliates, shall be satisfied and paid by the Purchaser in accordance with the terms of that certain "Purchase and Sale Agreement," dated July 7, 2011, between Skye and Republic, including any amendments, modifications or additions thereto as the same may be further documented and memorialized.

6. The claims of Beaver County ("**Beaver County**"), if any, as against the Debtors, the Purchased Assets and the Purchaser, as well as against their respective successors, assigns and affiliates, shall be satisfied and paid by the Purchaser in accordance with the terms of that certain "Settlement Term Sheet," dated July 13, 2011, between WUCC, CS, Skye and Beaver County, including any amendments, modifications or additions thereto as the same may be further documented and memorialized.

**Approval of the Asset Purchase Agreement**

7. The Purchase Agreements and the Executory Agreements, and all of the terms and conditions thereof (including, but not limited to, the sale of the Purchased Assets and the assumption and assignment of the Executory Agreements, in exchange for the Purchase Price and the Purchaser's assumption of the assumed obligations, as set forth in the Purchase Agreements), are hereby approved.

8. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale of

each of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Purchase Agreements, (b) timely and promptly close the Sale as contemplated in the Purchase Agreements and this Order, and (c) execute and deliver, perform under, consummate, implement and close fully the Purchase Agreements, and the assignment of the Executory Agreements, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreements and the Sale, including the Executory Agreements, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreements and the Executory Agreements.

9. The terms and provisions of this Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens against, or on, all or any portion of the Purchased Assets, the Purchaser and all successors and assigns of the Purchaser, the Purchased Assets and any trustees, if any, subsequently appointed in either of the Debtors' chapter 11 cases or upon a conversion to a chapter 7 under the Bankruptcy Code of either of the Debtors' cases. This Order and the Purchase Agreements shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, all interested parties and their respective successors and assigns. The Purchase Agreements shall not be subject to rejection in the Debtors' cases.

### Transfer of the Purchased Assets

10. Pursuant to sections 105(a), 363(f) and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of all Liens (except any permitted encumbrances and assumed obligations under the Purchase Agreements), with all such Liens to attach to the proceeds realized from the sale (the "**Proceeds**") attributable to the Purchased Assets which were subject to such Liens with the same validity, priority, force and effect that

they now have as against such Purchased Assets, subject to any powers, claims, and defenses the Debtors and their estates may possess with respect thereto.

11. At the Closing, the Purchaser shall pay the Purchase Price (as defined in the Purchase Agreements) to the Debtors, through escrow or directly, as requested by the Debtors.

12. With respect to the lode claims identified in the Limited Objection of Treasure, Inc. [Docket No. 761] (collectively, the "**Disputed Treasure Claims**"), as between CS, as the buyer of the Purchased Assets, and Treasure, Inc., as the alleged holder of the Disputed Treasure Claims, including their respective successors and assigns, nothing in this Order shall constitute an adjudication of the Disputed Treasure Claims, and all rights, claims and defenses regarding the same are hereby reserved and preserved for the respective parties to resolve in an appropriate non-bankruptcy forum of competent jurisdiction, *provided, however,* that if such other forum determines in a final ruling, judgment or order that the Disputed Treasure Claims are invalid or improperly located or that the Disputed Treasure Claims otherwise do not confer upon Treasure, Inc. any senior enforceable mining, exploration or other mineral rights in the Purchased Assets, then the sale of the Purchased Assets to CS shall be free and clear of the Disputed Treasure Claims.

13. Except as expressly permitted or otherwise specifically provided by the Purchase Agreements or this Order, all persons and entities holding Liens or interests in the Purchased Assets (other than the permitted encumbrances and assumed obligations under the Purchase Agreements) arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred and estopped from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such persons or entities' Liens, claims or interests.

14. On or after the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens (except the permitted encumbrances and assumed obligations under the Purchase Agreements) on the

13519203.10                                    14

Purchased Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

16. All entities that received actual or constructive notice of these cases and that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing, or upon Closing of the Sale.

15. All persons and entities are hereby forever prohibited from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Purchase Agreements and this Order.

17. If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Debtors at or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, release of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets as the Purchaser reasonably may request.

18. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deed, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of

13519203.10                                    15

the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreements. Without limiting the generality of the preceding sentence, a certified copy of this Order may be filed with the clerk(s) of such court(s) and/or recorded with the recorder(s) of such counties as may be appropriate to cancel any of the Liens and other encumbrances of record (except for the permitted encumbrances under the Purchase Agreements).

19. The Purchaser shall have no liability or responsibility for any obligation of the Debtors, other than the assumed obligations and other than as otherwise expressly set forth in the Purchase Agreements. Without limiting the effect or scope of the foregoing, the transfer of the Purchased Assets from the Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for claims (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Purchased Assets under the laws of the United States or any state, territory or possession thereof applicable to such transactions.

20. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets or a bill of sale transferring good and marketable title in the Purchased Assets to the Purchaser.

**Other Provisions**

21. Effective upon the Closing Date, and except as otherwise provided in the Purchase Agreements or in stipulations filed with or announced to the Court in the Debtors' chapter 11 cases with respect to a specific matter, all persons and entities that received actual or constructive notice of these cases are forever prohibited from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Liens (other than a permitted encumbrance under the Purchase

Agreements) arising under, out of, in connection with or in any way relating to the Debtors, the Purchaser, the Purchased Assets or the operation of the Purchased Assets prior to the Closing Date or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting or enforcing any Liens or other encumbrances against the Purchaser, its successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply, or is inconsistent, with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Purchased Assets or conduct of the businesses operated with the Purchased Assets, with regard to the licenses, permits or authorizations acquired by the Purchaser.

22. Except for the permitted encumbrances and the assumed obligations under the Purchase Agreements or as otherwise expressly provided for in this Order or the Purchase Agreements, the Purchaser shall not have any liability or other obligation of the Debtors arising or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Agreements, the Purchaser shall not be liable for any claim against the Debtors or their affiliates, and the Purchaser shall not have any successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date. The Purchaser has given substantial consideration under the Asset

13519203.10                                17

Purchase Agreement for the benefit of the holders of Liens. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which release shall be deemed to have been given in favor of the Purchaser by all holders of Liens against the Debtors or the Purchased Assets.

23. The transactions contemplated by the Purchase Agreements are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

24. The consideration provided by the Purchaser for the Purchased Assets under the Purchase Agreements is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

25. Pursuant to Bankruptcy Rules 7062, 9014, 6004 and 6006, and notwithstanding Bankruptcy Rules 6004(g) and 6006(d), for cause, as found above, this Order shall be effective immediately upon entry, shall not be stayed by operation of Bankruptcy Rules 6004(g) or 6006(d), and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

26. Nothing in this Order or in the Purchase Agreements approves or provides for the transfer to Purchaser of (a) any avoidance or recovery claims of the Debtors' estates (whether under chapter 5 of the Bankruptcy Code or otherwise), or any proceeds thereof, or (b) any other excluded assets (as defined in the Purchase Agreements), *provided, however,* that any and all recovery, avoidance, general and specific claims and causes of action of the Debtors, or their respective estates, as against the Purchaser and its affiliates, successors and assigns, including, without limitation, Skye, Skye Mineral Investors, LLC, Empire Advisors, LLC, Altus Metals, LLC, Strategic Capital Partners, LLC, Winterfox, LLC, Clarity Management, LP, Clarity

13519203.10 18

Copper, GP, Clarity Copper, LLC, and their respective officers, members, directors, employees, agents and owners, are hereby forever released, waived and discharged, *except for and excluding* claims for payment of the Purchase Price and for future performance of obligations under the Purchase Agreements.

27. Nothing contained in any chapter 11 plan confirmed in either or both of these cases, or in any order confirming any such plan(s), shall conflict with or derogate from the provisions of the Purchase Agreements or the terms of this Order.

28. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale, unless otherwise ordered.

29. Except as otherwise specifically provided above in this Order, all governmental entities, the Debtors and the Purchaser reserve their respective rights, claims and defenses with regard to any actual or potential income tax liabilities.

30. The failure specifically to include any particular provision of the Purchase Agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreements be authorized and approved in their entirety.

31. Section 14.3 of the APA is hereby deemed amended to delete the phrase ". . . for a period of six (6) months following the Closing . . . ." as contained therein, and to replace such phase with ". . . for a period of one (1) year, or such additional time as may be ordered by the Court in an order entered after appropriate notice to the Purchaser within such one (1) year period, following the Closing . . . ."

32. The Purchase Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms and limitations of the Purchase Agreements, without further notice, hearing, or order of the Court.

33. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreements, all

13519203.10                                    19

amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith (including, but not limited to, the Executory Agreements) to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

34. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35. To the extent there are any inconsistencies between the terms of this Order and the Purchase Agreements or any related agreements, documents or other instruments, the terms of this Order shall control.

36. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Order shall govern.

37. There being no reason for delay, the Clerk of this Court is hereby directed to enter this Order as a final order and judgment of the Court.

***** End of Order *****